## W. & C. Kelsey *vs.* Bradbury.

C. made a note, payable to R. or order. R. indorsed it to E. and H. The indorsees recovered a judgment upon it, against the maker and indorser. R. paid the judgment, received back the note, and transferred it to the defendant, who set it up as a defense to a demand upon which the plaintiffs sued as assignees of C., the maker. *Held* that the note was not merged in the judgment, but had still sufficient vitality to enable the defendant to interpose it as a valid set-off or counter-claim against the plaintiffs' demand.

The engagement of successive parties to a promissory note is not joint, nor does the statute authorizing a joint action against all, make it so. That act applies only to the remedy of the party prosecuting; and has no effect upon the promises of the prior parties to each other, or to their rights and responsibilities as between each other.

APPEAL by the plaintiffs from a judgment of the city court of Brooklyn. The complaint alleged that heretofore, at the city of Brooklyn, one Patrick R. Cox, at the defendant's request, made, sold and delivered to the said defendant, sash and blinds, did work and furnished materials for him, of the value of one hundred and nine dollars, over all payments. That the same was, on the 3d day of December, 1853, overdue and wholly unpaid. And that on the said 3d day of December, 1853, the said Patrick R. Cox, for a valuable consideration, sold and assigned his said claim and demand against Bradbury to the plaintiffs, and that the plaintiffs were the lawful owners and holders thereof. And that the said James Bradbury was justly indebted to the plaintiffs thereon, in the sum of one hundred and nine dollars, with interest since the said 3d day of December, 1853. Wherefore the plaintiffs demanded judgment against the defendant for said sum, with costs.

The defendant, by his answer, denied that the sum claimed by the plaintiff, of one hundred and nine dollars, being the alleged value, over all payments, of the sash and blinds, work and materials, as stated, was overdue and unpaid by the defendant to the Patrick R. Cox mentioned in the complaint, because the defendant, by way of set-off and counter-claim, alleged that before and on the 3d day of December, 1853, and before the

alleged assignment by the said Patrick R. Cox to the plaintiffs, as stated in the complaint, the defendant was the lawful owner and holder of a promissory note, made and signed by the said Patrick R. Cox, dated Brooklyn, January 26, 1852, wherein and whereby the said Cox promised to pay Henry Rouse, or order, three months after date, one hundred and thirty-seven dollars ninety-four cents, for value received, which note the said Henry Rouse, for value received, duly indorsed and delivered to the defendant; that the same is now wholly due and unpaid, and the said Patrick R. Cox, before the said alleged assignment to the plaintiffs, was and still is indebted to the defendant thereon, in the sum of $137.94, with interest from April 29, 1852, which amount the defendant claimed was more than the amount due to the said Cox from the defendant, at the time of the alleged assignment to the plaintiffs; wherefore the defendant demanded judgment against the plaintiffs, that their complaint be dismissed with costs.

A reply was put in, denying the matters set up in the answer.

The action came on to be tried before the city court of Brooklyn, on the 12th day of April, 1854, at a jury term, John Greenwood, city judge, presiding. A jury being drawn and sworn, the plaintiffs were about calling witnesses to prove the claim and assignment thereof, set forth in the complaint, whereupon the defendant, by his counsel, admitted said claim and the assignment thereof to the plaintiffs, on the 3d day of December, 1853, and that the same amounted to $109. The court thereupon stated that the defendant held the affirmative of the issue to be tried. The defendant called as a witness *Henry Rouse*, who proved the making of the note by Cox, set forth in the answer. He further testified: "I received this note of Patrick R. Cox, the maker, at about its date, for hinges sold by me to him. I sold and delivered it to the defendant. on the 25th day of November, 1853, for $60. I took defendant's note for the $60, payable in two months. That note has been paid by defendant. I have no interest in the $137.94 note, nor in the event of this suit. Cox has never paid me

any part of said note." On being cross-examined, the witness further testified, (under objection :) "I passed away the Cox note to Elliott & Holden, of New York, for iron, soon after I received it from Cox. It belonged to Elliott & Holden when it fell due. They sued it in the supreme court against Cox and myself, and it went into judgment. About six months after judgment, I paid Elliott & Holden the amount of said judgment, and they handed me back the note ; after that I sold it to the defendant, as stated above." The defendant here rested his case, and the plaintiffs offered and read in evidence an exemplified copy of a judgment record, from the files in the office of the clerk of the city and county of New York, upon the note in question, in favor of Henry H. Elliott, jr. and James E. Holden, plaintiffs, against Patrick R. Cox and Henry Rouse, for $150.91, docketed and perfected July 17, 1852. The defendant objected to this testimony, unless followed by proof of payment of the judgment by Cox. The plaintiffs then rested their case ; admitting that the transfer of the note to the defendant was prior to the assignment of Cox to the plaintiffs. The plaintiffs' counsel requested the court to charge the jury as matter of law, that by the judgment upon the note, the note as a simple contract, became merged and extinguished. That it was no longer the representative or evidence of the debt of the maker, and could not be restored to vitality as mercantile paper, even though the judgment had been paid by Rouse, the indorser. That said note was not a valid set-off in the hands of the defendant, against the claim of the plaintiffs, and that the plaintiffs were entitled to recover herein the amount of their said demands. The court refused so to charge the jury, but charged that under the evidence the defendant was entitled to a verdict. To all of which charge and ruling the plaintiffs' counsel excepted. The jury found a verdict for the defendant.

The following opinion was delivered by the city judge, on a motion for a new trial.

GREENWOOD, City Judge. Cox made a note, payable to Rouse or order. Rouse indorsed it to Elliott and Holden. The

indorsees obtained a judgment upon it against the maker and indorser. The latter paid the judgment, received back the note and transferred it to the defendant, who sets it up against a demand upon which the plaintiffs sue as assignees of the maker. It is contended by the plaintiffs' counsel that the note was merged in the judgment, so that it was no longer the subject of an action, or capable of being transferred by the indorser.

There can be no doubt that if the indorser had paid the note before judgment, although after maturity, he could have recovered upon it against the maker, or put it again in circulation. (*Havens* v. *Huntington*, 1 *Cowen*, 387. *Leavitt* v. *Putnam*, 3 *Comst.* 494.) Payment would not have extinguished the note. So, after judgment against maker and indorser, the latter may purchase and take an assignment of the judgment, as against the maker, and enforce it against him. (*Corey* v. *White*, 3 *Barb. S. C. R.* 12.) But here the indorser did not take, and perhaps could not have obtained, an assignment of the judgment, and the question is, what is the effect of the judgment upon the rights of the indorser, or of a new indorsee as to the remedies upon the note itself.

In *Corey* v. *White*, (*ubi supra*,) the court say: "A judgment extinguishes merely the liabilities of the defendant to the plaintiff, and leaves unaffected the liability of the prior parties to the defendant." A judgment against the indorser alone would not, therefore, affect the liability of the maker to him. All that the indorser would have to do would be to pay the judgment, and then by repossessing himself of the note he would become again invested with all the rights against the maker which he before had. It would be the same, in effect, as if the indorser had paid the note before judgment; for the court observe in the same case: "A judgment has no greater effect in extinguishing a demand than payment."

It is settled by the case to which I have last referred, that a recovery in a joint action, under the statute, against the several parties to a promissory note, has no effect on the contract which exists between them *as amongst themselves*, although the plaintiff in the action could not afterwards sue either of them.

Then suppose the maker in this case had been sued separately to judgment, and the indorser had paid the judgment and received back the note, how could the rights of the indorser against the maker have been prejudiced? The judgment would have been extinguished by the payment, but not the indorser's demand against the maker. The indorsee's right of action on the note would have been merged and gone, but not the indorser's, for that of the latter is not derived from the indorsees, but arises from his relation to the maker, upon the note. There is a wide difference between the merger of a demand of a particular party, and a merger of the note itself, upon which demands of other parties depend.

The maker cannot be prejudiced by holding this doctrine. He had never paid the note, nor is there any judgment remaining against him, for that has been extinguished by the payment by the indorser. That the effect of a joint judgment is the same as if separate suits had been brought, is settled by the case of *Corey* v. *White.*

The precise question here raised has not, that I am aware, been determined in this state, but I am referred to the case of *Prest* v. *Van Arsdalen,* (6 *Halst.* 194,) as an authority in favor of the plaintiffs. That case arose upon an appeal from a judgment in a justice's court which had been affirmed in the common pleas. The opinion of the court is brief, and the decision is put on the ground that by the judgment against the maker the note had passed *in rem judicatam.* The case of *Bean* v. *Smith,* (2 *Mason,* 268,) is referred to by the court as sanctioning the doctrine. I have examined that case, and find that it was a judgment creditor's bill to set aside fraudulent conveyances. One of the minor questions raised, was as to the jurisdiction of the court; and Judge Story, in the very able opinion which he delivered in the case, says upon the point, what is obviously correct, (although it was not necessary to the decision of the case,) that the cause of action having passed into *rem judicatam,* the defendant could not go behind the judgment to inquire how the case would have stood as to juris-

diction upon the cause of action itself. In other words, that this matter was *res judicata* between the parties.

With perfect respect for the court which decided the case in New Jersey, I confess that I am unable to see the analogy between the two cases ; nor do I perceive how a judgment between indorsee and maker is *res judicata* between indorser and maker. There is no privity between indorser and indorsee so far as the indorser's right of action against the maker is concerned, for that right of action grows out of the relation between the two latter created by the note. There is no indorsement back to the indorser, Nor has the indorser any agency in obtaining the judgment against the maker. How then does the doctrine of *res judicata* apply ?

In the present case the note was passed to the indorsees (who obtained the judgment) for value, upon the responsibility of the indorser, as well as of that of the maker, and the indorser was morally and legally bound to them as much as the maker was. The indorser paid the judgment, and received back the note, and this, I think, placed him upon the same footing, as respects the maker, upon which he was before he passed the note away. Perhaps, as before intimated, if he had desired an assignment of the judgment, he could not have obtained it. The note was not an accommodation note as between maker and indorser, and there may be a question whether an action could be maintained by the latter for money paid to the use of the former. The note is now in the hands of a holder who took it for value from the indorser, having no knowledge that a judgment was once obtained upon it, The maker has no valid defense to it, other than the purely technical one to which I have referred, and that, I think, cannot prevail. Equity, as applicable under the code and commercial policy, both favor, I think, the doctrine contended for by the defendant. With these views I must adhere to the ruling at the trial, and if I should err, leave my error to be corrected by the supreme court. New trial denied,

*Lewis & Browne*, for the appellants. I. The promise of Cox in the note was to Rouse *or* to his order. Rouse indorsed and

transferred the note and the promise to Elliott & Holden, who, thereupon, became the absolute owners and holders of the note, and the promise of the maker, Cox. The fact that the indorsement by Rouse gave to Elliott & Holden a contingent collateral remedy, or an additional security, did not make them less the sole owners of the note, and the whole contract of the maker.

II. Whatever Elliott & Holden did to or with the note, while they were the sole owners, is binding upon any subsequent owner, after maturity, or even before maturity, with notice. In this case, the return of the note to Rouse was both after maturity, and with full notice.

III. Elliott & Holden, while owners of the note, sued it into judgment against the maker, and thereby merged and extinguished the note. The promise of Cox is distinctly set up in the complaint, and damages were assessed thereon in the judgment. A judgment is a higher security than a simple contract; and a security of a higher nature, extinguishes a debt of an inferior degree. ( *Vin. Abr. Debt,* Y. *Bac. Abr. Extinguishment, D. Andrews* v. *Smith,* 9 *Wend.* 53. 21 *id.* 339. 6 *John. Ch.* 266.) A judgment against two of four partners, bars an action against the four. (18 *John.* 459, 476. 6 *id.* 26. 1 *Denio,* 224. 6 *Barb.* 19. *See Bayley on Bills, ch.* 9, *p.* 335, *5th ed. People* v. *Beebe,* 1 *Barb.* 379. 6 *id.* 458. *Parker* v. *Cassidy,* 16 *id.* 177. *Clark* v. *Rowling,* 3 *Comst.* 216.) A judgment of a competent court of a sister state, upon a simple contract, extinguishes it; and an attachment against the property of an absent debtor cannot be founded on the contract. (1 *Hill,* 482.) Whether a surety, paying a judgment against himself and his principal, can take an assignment and enforce the judgment against his principal? Quere. ( *Ontario Bank* v. *Walker,* 1 *Hill,* 652. *Bank of Salina* v. *Abbot,* 3 *Denio,* 181. *Harger* v. *McCullough,* 2 *id.* 119. *Corey* v. *White,* 3 *Barb. S. C. Rep.* 12.)

IV. By the judgment upon the note, even " as evidence of an indebtedness," (in the language of the court in 3 *Comst.* 216,) " it no longer existed." It could not after this be resuscitated or galvanized into life. No other action could afterwards be

maintained by any one on the same promise. (*Prest* v. *Vanarsdalen*, 6 *Halst*. 194.)

V. If no action could be maintained upon this note, then it could not be the subject of a set-off to an action, or a counter claim. (2 *R. S.* 450, § 39.)

VI. When Rouse, the surety, paid the judgment to Elliott & Holden, he had a cause of action against Cox, the principal, for money paid to his use. It was not in writing. It was the implied promise which the law always raises in favor of a surety, who pays money for his principal. This cause of action has never been assigned to the defendant, and is not set up in his answer, and the court have not the power, after suit brought, to allow a defendant to buy up a set-off or counter-claim to defeat the plaintiff.

VII. Upon the equities, the defendant ought not, as at law he cannot, succeed in his defense. The purchase of the old dormant note of $137, for $60, at 60 days, was an avowed risk and speculation by the defendant. He owed Cox $109, then overdue, and which Cox was obliged to sell to the plaintiffs for $100, to get money for his workmen. The defendant's speculation, trick and oppression towards Cox, do not commend themselves to the favor of this court.

*D. P. Barnard*, for the respondent. I. By the judgment in favor of Elliott & Holden, against Cox, the maker, and Rouse, the indorser, the note, as a simple contract, did not become merged and extinguished, as between Rouse and Cox. (*Davis* v. *Perrine*, 4 *Edwards*, 62. *Harger* v. *McCullough*, 2 *Denio*, 119. *Corey* v. *White, supra*. *Dresser* v. *Brooks, Id*. 429.)

II. The payment of the judgment by Rouse, the indorser, restored the note as the representative or evidence of the debt of the maker, and its vitality as mercantile paper. It was still the promise of the maker which had not been performed. It was assignable to the defendant, and in his hands was a valid set-off against the plaintiff's claim in this action. (*Davis* v. *Perrine, supra*. *Harger* v. *McCullough, supra*. *Leonard* v. *Barker*, 5 *Denio*, 220.)

III. The issues raised by the plaintiff's reply against the counter-claim, amounted only to a denial of that counter-claim, like the old general issue, and did not authorize the defense of another judgment recovered, and hence the charge of the court, that under the evidence the defendant was entitled to a verdict, was correct.

*By the Court,* S. B. STRONG, J. The plaintiffs' claim as stated in the complaint, was admitted on the trial. The defendants, by way of set-off and counter-claim, introduced and proved a note for a larger amount, made by Patrick R. Cox to Henry Rouse, and indorsed after it had become due, by Rouse to the defendant. It was proved that before such indorsement to the defendant it had been held by Elliott & Holden (probably as indorsees;) that they had brought a suit against Cox and Rouse jointly, in which they had obtained judgment for the amount due on the note, and that Rouse had paid the judgment, and the note had then been returned to him. The defendant had in his answer relied simply upon the note and its indorsement, and had made no claim as assignee of Rouse for money paid by him for the use of the plaintiffs, or of the judgment. The plaintiffs contended, on the trial, that the note was merged in the judgment, and had not after that, any vitality which would enable the payee or any subsequent indorsee to interpose it as a valid set-off against any demand by the maker, or, as in this case, his assignees (whose interests had accrued after the indorsement of the note to the defendants.) The court below ruled against the plaintiffs, and directed the jury to find a verdict for the defendants, which they did, and the counsel for the plaintiffs excepted.

Before proceeding to give an opinion upon the only point raised on the trial, I deem it proper to express my warm approbation of the liberal course pursued by the counsel on both sides in admitting the facts, on the trial, and in making no attempt to embarrass each other about matters concerning which there could be no reasonable doubt. Were such a course generally adopted it would greatly facilitate the transaction of

business in our courts, and prevent ⬤ much complained of law's delay.

The suit in which the former holders of the note obtained judgment against the maker and indorser was ·brought under the provision of the revised statutes authorizing a joint action by such holders against all the prior parties, whether makers or indorsers. (2 *R. S.* 352, § 6.) That did not make such makers and indorsers joint debtors, but simply created a joint remedy against them. It was expressly provided by another section, (11,) that the rights and responsibilities of the same parties to any bill or note, *as between each other*, should remain the same as though that act had not been passed, saving *only* the rights of the plaintiff, so far as they may have been determined by the judgment. Now but for the passage of that act the holders of the note in this suit, if they had sued the indorser, must have sued him alone, and upon their obtaining a judgment against him, and his paying it, he would have become entitled to the note, and would have had a right to maintain an action upon it, against the maker, and that would not have been impaired even if the holder had also obtained another judgment against the maker. A judgment only extinguishes (when it extinguishes at all) the claim upon which it is founded. It does not even extinguish a collateral security between the same parties and for the same demand. Now that there is an obligation from the maker of the note to the payee who has become an indorser is very clear. The maker in effect promises to the indorsee that he (the maker) will pay the note to the indorsee. When that promise is broken, and the indorser is compelled to pay the money, he has his right of action upon the original promise. It does not result simply from the payment; if it did, the action should be for money paid. In the case of ordinary sureties there is no primary engagement of the principal to them. The entire engagement is joint, and therefore the judgment, when one is obtained, merges the original claim, as to all. The remedies of the sureties, against the principal, or against each other for contribution, result from the payment of the money, and the promise implied from that to refund or contribute. The

Ogdensburgh, Rome and Clayton R. R. Co. *v.* Frost.

engagement by successive parties to a note is not joint, nor does the statute authorizing a joint action against all make it so. That applies only to the remedy of the party prosecuting, and has no effect upon the promises of the prior parties to each other. I fully agree to what was said by Judge Willard, upon this subject, in giving the opinion of the court in *Corey* v. *White*, 3 *Barb. S. C. R.* 14.) He there says " that the liability to the plaintiff in the suit, of the respective makers, drawers, acceptors and indorsers, is extinguished by the judgment. The plaintiff cannot, after the recovery, maintain a separate suit against either of the parties to the instrument who are defendants in the judgment. This, however, can have no effect on the contract which exists between the prior parties to the bill or note as amongst themselves. The contracts are not the same, but different." The decision in that case has not been overruled, and it is a good authority.

The judgment should be affirmed.

[Dutchess General Term, April 8, 1856. *Brown, S. B. Strong* and *Rockwell*, Justices.]