### *Simonds* v. *Catlin*.

THIS was an ejectment for lands in the county of *Onondaga*.

Upon the trial the plaintiff produced the exemplification of a *judgment* of this court, in the cause of *Levi Barker*, against the defendant for debt, and entered of the term of *July*, 1800, in which cause the *venue* was laid in *Albany*. He further produced the exemplification of a *fi. fa.* directed to the sheriff of

*Onondaga*, and tested the 9th day of *August*, 1800, commanding him to levy the debt and costs of the above judgment, and which execution contained an indorsement of being received by the sheriff on the 4th of *October*, 1800. It also contained a return annexed, in the words following, viz.

" I, *Levi Sherman*, under sheriff to *Elnathan*
" *Beach*, Esq. late sheriff, deceased, do, in pursuance
" of the law, and in consequence of the death of the
" sheriff, return, that the said sheriff sold at vendue,
" all that farm or tract of land in the town of *Pompey*,
" in the said county, in the occupancy of the defend-
" ant, some time in *January*, 1801, and before the
" 15th, to one *Ebenezer Butler*, junior, he being the
" highest bidder, for 26 dollars. That the said *But-*
" *ler* did not pay the money for the same ; and by
" order of the said sheriff, I did, on the 22d day of
" *January* aforesaid, expose the said land to sale
" again, and that *Joseph Simonds* purchased the same
" for 50 dollars, he being the highest bidder. That
" the said sheriff died on the evening after the ven-
" due last aforesaid, and before the said writ was re-
" turned. And I, the said under sheriff, do make
" this return, this 23d *January*, 1801.

" *Levi Sherman.*"

The plaintiff further proved, that the defendant, at the time of the sale, and at the commencement of the suit, was in possession of the premises. The defendant then moved for a nonsuit, and was overruled. He then offered to prove that the sale to *E. Butler*, junior, was not a ready-money sale, but at a credit, and that *Butler* had always been ready to pay, and that the se-

cond sale was made at the solicitation of the lessor of the plaintiff, who was the attorney in the original cause, without any notice by advertisement, and on his indemnity to the sheriff, who was then on his death-bed, and incompetent to attend to his business, and that the lessor of the plaintiff knew of the previous sale. The defendant further offered to prove, that the indorsement on the execution was made in *May*, 1802, at the request of the said lessor ; but the testimony was overruled. The defendant then offered in evidence, a deed from the said *Elnathan Beach* to the said *Butler*, for the premises, in pursuance of the first sale, bearing date the 7th day of *August*, 1801, and to which deed was annexed a certificate of proof of the same before a master, by the acknowledgment of the said *Levi Sherman*, that he executed the same, in the name of the said *Beach*, and as under sheriff to the same, the said *Elnathan* being dead, which evidence was likewise overruled, and a verdict taken for the plaintiff.

Upon this case, a motion was made to set aside the verdict, for these reasons : 1. That a *fi. fa.* issuing into a different county than that in which the *venue* was laid, without a *testatum* is void. 2. That the *fi. fa.* bore test out of term. 3. That there is no deed from the sheriff to the plaintiff. 4. That the return of the sale contains evidence of a void sale. 5. That the evidence offered at the trial ought to have been received.

*Per Curiam,* delivered by KENT, J. The two first objections go to the *form* of the execution, and considering the circumstances attending this case, the

plaintiff ought, in justice, to be held strictly to a legal title. He was the attorney who sued out the execution, and the second sale was made on short notice, if indeed any notice was given, and he himself became the purchaser. The plaintiff is, therefore, properly chargeable with notice of every irregularity attending the execution. Prior to this motion, a rule was granted to amend the *fi. fa.* by making it a *testatum*, but as the rule was granted upon the express condition of being without prejudice to the objection to be raised in this case, and which was then pending for argument, the court are justified in putting the amendment out of view. And there can be no doubt, but that the *fi. fa.* ought to be set aside for irregularity, on the ground of the first objection, as the cases of *Allen* v. *Allen*, and *Brand* v. *Mears*,* go that length even after execution executed.

May Term, 1804.

* *Black. Rep.* 697. 3 *D. & E.* 388. See also *Barnes,* 209.

The second objection to this *fi. fa.* that it bears test out of term, is equally well taken.† The process for that reason, is held to be void, and the party suing it out, cannot take advantage of it, although it may justify the sheriff, and if the case be within the reach of an amendment, yet as the amendment must always be a matter of sound discretion, I should not be inclined to grant it in the present case, for the reasons I have suggested.

† 2 *Salk.* 700. 7 *Mod.* 30. *Latch.* 11. *T. Jones,* 150; 1 *Stra.* 137, 138.

The next objection goes to the *merits* of the case, and is founded on the want of a conveyance from the sheriff. This is a question of importance and difficulty. It has been attended with doubt and embarrassment in my mind, but I have come to the opi-

May Term, 1804.

nion, that the estate of a defendant, cannot pass at a sheriff's sale, but by deed or note in writing, to be signed by the sheriff, as the party or agent who passes the estate.

The act directing the sale of real estates on execution is silent, as to a conveyance from the sheriff; and yet a conveyance upon such sales, is dictated by the same policy that applies to all other alienations of land. Without a deed or note in writing, there would be no written document of the sale ; for, in the first place, it is not requisite to the validity of the proceedings on execution, that the writ should ever be returned : nor is it requisite, even if a return be made, that the sheriff should specify with certainty the particular lands sold, or the name of the purchaser.  It would be sufficient to state, that of the lands and tenements of the defendant, he had caused to be made the debt and damages specified in the writ, as he was thereby commanded.  If, therefore, the estate passes upon the sale, without any writing whatever, the general policy of the law would, in this instance, be contravened, and would be productive of manifest public inconveniences. In the county where the lands in question lie, every conveyance, whereby any lands in that county may be any way affected in law, or equity, shall be deemed void against any subsequent purchaser or mortgagee for valuable consideration, unless recorded.* The present case is not within the act, because here is no subsequent purchaser to contend with, but cases of that kind must often arise, and if sheriffs' sales be not within the provisions of the act, it would work very great imposition and fraud.  A purchaser would go to the records, and if he found no convey-

* 2 Rev. Laws, 263.

ance from the defendant, he would naturally conclude he might purchase in safety. But if a sheriff's sale is to defeat him, he would in vain seek for the evidence of it. The purchaser from the sheriff, has nothing to show. There is even wanting the livery of seisin, which, in the simplicity of ancient times, and before writing was much in use, was held indispensable to the transfer of an estate. He could only ascertain the fact of the sale by the sheriff, from searching after and examining those who may happen to have been eye-witnesses of the transaction. I cannot think that the law intended to induce such inconvenience, and uncertainty. If we were to judge of the sense of the legislature from the various other cases in which the law is explicit, and which are cases in *pari materia*, it would leave no doubt on this question. All sales by the *surveyor-general* at auction, by order of the commissioners of the land-office; sales of land by order of the *court of probates*, for payment of debts; sales at auction by loan-officers, of lands mortgaged to them, and sales by *sheriffs for quit rents*, by virtue of process from the exchequer, (and this last is a case perfectly analogous to the present) are required to be completed by a formal conveyance from the public offices. It appears to me that sheriffs' sales must be within the statute of frauds, which declares that no estates of freehold, or terms of years shall be granted, but by deed or note in writing, or by act and *operation of law*. I need not undertake to show that a sheriff's sale is not an act and *operation of law*, within the meaning of this statute. These words are strictly technical, and refer to certain definite estates, such as those by the curtesy and dower, or those created by *remittitur*. It has

*1 Rev. Laws,* 274. 280. 289. 295. 298, 9. 302. 324. 610.

*1 Rev. Laws,* 79.

been said by Lord *Hardwicke*,* that a judicial sale of an estate, took it entirely out of the statute. The reason why it is out of the statute, I do not so well comprehend ; it is not because the sale is *at auction*, for it is settled, that those sales, if they relate to *land*, are within the statute of frauds. Nor does a sheriff's sale appear to me to be *in its own nature* free from all danger of introducing fraud or perjury, and so, not within the mischiefs intended to be prevented by the statute.

The case in which Lord *Hardwicke* is said to have ruled as broadly as I have stated, is quite obscurely reported. The agreement must have been made before the master, or acquiesced in, in court ; and it seems to have been more like a consent upon record, than any thing else. At any rate, I cannot consider that observation in chancery, as a sufficient authority to set aside the plain letter of the statute.

I apprehend the general practice has been different ; and, that upon sales, under the direction of a master in chancery, as well as sales by sheriffs at law, the sale has uniformly been consummated by a conveyance.

This general usage ought to have great weight in a case where a statute is susceptible of two constructions ; and especially, when the literal interpretation, and perhaps the reason of the thing, are in favour of the construction adopted in practice.

The minute provisions in our statute regulating sales on execution, and even the facts in the very case

before us, are sufficient to show, that these kinds of sales, are equally within the danger of the mischiefs which the acts ought to prevent. The court of chancery itself has latterly admitted,* that it had gone rather too far in permitting part performance and other circumstances, to take cases out of the statute of frauds. I am of opinion, therefore, that a sheriff's sale is within the statute of frauds.

There was an ancient principle of the common law that would, if it applied, have superseded the necessity of a deed. It was a rule, that where a thing took effect out of a naked *power or authority,* it was good without deed; but where a thing took effect out of an interest, there it must be by deed, if incorporeal; and by livery, if corporeal. In pursuance of this rule, it hath been held, that if executors be ordered in a devise to sell land, they may do it by deed, or by parol, because the vendee takes under the devise, and not under the conveyance of the executors; according to the principle, that whoever claims under the execution of a power, must make title under the power itself. Whether this principle would, or would not have applied to the present case, I need not now examine, for admitting that it did, I am satisfied that the statute of frauds has done it away. The only remaining inquiry upon this head is, whether the return of the under sheriff was not a sufficient *deed or note in writing* within the act? But there are several objections to this return. In the first place, it is not, in pursuance of the statute, a return in the *name of the sheriff.* It is expressly a return in his own name. When a

z z

May Term,
1804.
man acts in contemplation of law, by the authority and in the name of another, if he does an act in his own name, although alleged to be done by him as attorney, it is void. In the case of *Frontin* v. *Small*, the attorney executed a lease in her own name, although stated to be made for, and in the name of the principal, and the lease was held to be void, because made in her own name. This case was recognized as good law, so late as the case of *Wilks* v. *Back.* This return is not, therefore, an act of the sheriff, of which we can take notice. But admitting it to have been made in the name of the sheriff, it could not be a sufficient deed, or note in writing of the sale, because it has not the requisite certainty. It does not appear what estate was sold, whether an estate for years, for life, or in fee, nor is there any certainty as to the thing sold. It is stated to be *all that farm, or tract of land in Pompey, in the tenure and occupation of the defendant.* But there is no kind of estimation of the quantity of land sold, nor in what part of the town it lays, or how marked and bounded. I do not mean to be understood to say that a note in writing of a sheriff's sale must be precise as to the quantity of acres, and as to the metes and bounds, but the thing sold, must in all cases be specified with so much precision as from the description it can be reduced to certainty, and especially in the case of sheriffs' sales; for it was decided, *Jackson,*

Oct. term,
1799.
*ex dem. Jones,* v. *Striker,** that at such sales, no property could pass but what was, at the time, ascertained, and declared. This appears to me to be an excellent rule to prevent fraud and speculation at such sales, and I should be sorry to see it impaired.

A general sale by the sheriff, of all that tract of land in the town of *Pompey*, in the tenure and occupation of the defendant, does not appear to me to comport with the rule. It might as well have been all that tract of land in the county in his possession. I am of opinion, a more definite description of the situation and amount of the land, and of the quantity of the defendant's interest therein, ought to have been stated, and that the evidence of this sale, even admitting it to have been duly made by the sheriff, has not the requisite certainty.

In *England*, when the sheriff extends lands by *elegit*, he returns an inquisition, specifying the farm, the number of acres, the metes and bounds, the value, &c. Yet the statute of *West*. 2. 13 *E*. I. c. 18. which gave the *elegit*, only required in general, that the sheriff deliver one half of the defendant's land, until the debt be levied upon a reasonable price or extent. If, however, all the objections hitherto raised, had been surmounted, I am of opinion that the evidence offered on the part of the defendant at the trial, ought to have been received, to show the sale was fraudulent and void. The evidence went to show, that the first sale was valid and binding, and had been carried into effect by a deed from the sheriff. That the second sale was made, at the solicitation of the plaintiff, without any notice by advertisement, and on his indemnity to the sheriff, who was then on his death bed, and incompetent to do business. These circumstances ought to have been left to a jury, to draw

such inference from them, as the case required, and it is not to be disputed but that the whole sale may be rescinded on the ground of fraud. For these reasons, I am of opinion the verdict ought to be set aside, with costs to abide the event.

----◄◉►----

## AUGUST TERM, 1804.