Willets agt. Van Alst.

## SUPREME COURT.

WILLETS agt. VAN ALST and others.

A sale by a referee, executing a judgment of the court in an action of foreclosure, is within that section of the statute of frauds which provides that no estate or interest in lands shall be granted unless by act or operation of law, or by deed of conveyance in writing subscribed by the party making the same.

But the transaction between the referee and the successful bidder, on such sale, is not to be regarded as a *contract*, and is not within that section of the statute, requiring contracts of sale to be subscribed by the seller of the land.

In such a case the referee acts as the minister of the court, and although no action could be maintained against the purchaser on the memorandum subscribed by him at the foot of the conditions of sale—a *quasi* contract, lacking essential elements of a contract, parties, mutuality, consideration; yet that was really a submission to the jurisdiction of the court in the foreclosure suit—a consent to the exercise of the powers which courts of equity assert *ex proprio vigore* over purchasers.

A purchaser having deposited the 10 per cent. with the referee and failed to complete, and a second sale having been made for a much less sum, the percentage so paid into court will be applied towards the payment of such deficiency.

Where one claiming under such defaulting purchaser as the owner of the bid, becomes the owner of the judgment and obtains an order in the cause giving him the right to complete the purchase, but fails to do so to the prejudice of a subsequent incumbrancer, the court, at special term has no power to postpone the payment of the judgment out of the proceeds, and to apply the moneys, in the first instance, to the satisfaction of subsequent liens.

JUDGMENT of foreclosure and sale, in the usual form, having been entered, the premises were sold by Samuel Johnson, referee, on the 17th of March, 1853, at public auction, to John Thursby and others, for $30,050, and the 10 per cent. was deposited, by Thursby, to whom the other purchasers assigned their interest in the bid. At the sale the usual printed terms of sale were used, and the purchasers signed at the foot thereof the usual promise to complete. The referee did not subscribe any contract of sale, or make any report or deed. On the 23d of April, 1853. John Thursby died, and his widow, John B. Thursby, and three other sons, acted as executrix and executors. On the 4th of May, 1853, the plaintiff assigned the said judgment to John B. Thursby.

Upon the petition of John B. Thursby and his said three brothers, a reference was had, and the referee reported that they were the owners of the bid, and thereon an order was made in the cause on the 31st of December, 1858, affirming that report and directing the referee to convey the premises to John B. Thursby and brothers on the settlement and payment by them of the balance of the purchase money, and that upon the consent of Mrs. Van Alst, who held the second mortgage, and of Mr. Britton, the owner of the equity of redemption, they should receive

mortgages for their respective shares of the surplus; Hezekiah D. Hull, the third mortgagee, to be paid in money. This order was not carried out, except that some payments were made to Mrs. Van Alst on account of interest due on her mortgage.

On the 29th of July, 1859, John B. Thursby and his said three brothers made an assignment of their property, including the judgment in this action, to Charles H. Trask, Esq.

On the 6th of March, 1860; upon petition of Britton, an order was made at special term, directing a resale of the premises by the referee (unless Mr. Trask should elect to carry out the order of December, 1858), and reserving all questions as to the application of the proceeds. Under this order, the premises, on the 12th day of June, 1861, were sold to Hezekiah D. Hull for the sum of $10,000, and the 10 per cent. deposited.

Thereupon Hull, upon petition, reciting the whole proceeding, applied to the court at special term for an order that the moneys arising from both sales be applied to the payment first of the mortgage of Mrs. Van Alst, and secondly of his own, instead of being applied first to the satisfaction of the judgment. At a previous special term Judge Brown directed that the motion stand over to the end that the executrix and executors of John Thursby, claiming to be interested in the moneys deposited on the first sale, might be made parties.

Wm. R. Stafford, *for the petitioner, Hull.*
Mr. Griffin, *for Mrs. Van Alst.*
Oliver Dyer, *for Mr. Trask, the assignee of Thursbys.*
Jos. Neilson, *for the executrix, &c.*

The counsel for the petitioner Hull made the following points :
I. The defendant Hull is the only real party injured,

and as all the parties personally liable are insolvent he has no redress unless relieved by the court.

His application is addressed to the equitable powers of the court to compel *equity* on the part of the contestants.

We do not ask to vacate the judgment, or that the amount directed to be paid the plaintiff on his mortgage debt be forfeited, but that its payment be postponed so that the plaintiff's assignee shall *not* be paid until Mrs. Van Alst and our mortgages are satisfied.

II. This is an equitable application, and does not involve any forfeiture of the decree.

A court of equity has always power to modify its decrees, and control and direct the application of moneys arising under its decrees.

It might with force be insisted that the payment of the plaintiff's claim by the purchasers at the first sale extinguished and satisfied it in fact. They were bound to pay it out of the purchase money, and could not keep it alive by taking an assignment, evidently colorable and intended to delay subsequent creditors and incumbrancers.

If this were a common law judgment for a sum of money, such a payment would undoubtedly extinguish the claim as against subsequent creditors.

It is precisely the position of a *dormant* execution.

By the acts of the parties owning the judgment they have rendered it *dormant* so far as we are concerned; neglecting to act for more than eight years, they cannot complain if they are now forced to what they should have done at that time : *i. e.*, pay in the money sufficient to satisfy our demand.

The holder of the judgment, being the purchaser and holder of the bid at the sale, was bound for the whole amount of the bid, $30,500 ; as he cannot (being insolvent) complete or pay his bid, the amount of the judgment due him is the only property (except the 10 per

cent.) which can here be attached to secure the other creditors who are injured by his acts.

And although it is equitable that it should be wholly forfeited, our application merely postpones its payment, and thus does not work a forfeiture.

John B. Thursby, the assignee of the plaintiff's claim, was at the time or shortly afterwards the owner (whether alone or with others is immaterial) in *equity* of the premises, and was entitled to and would have received a conveyance if compliance had been had with the terms of the first sale; and it is well settled that "where the equitable owner for his own benefit pays off a mortgage he cannot, by taking an assignment, hold it as an outstanding lien. *He is not a stranger*, and has no equities superior to the subsequent incumbrancers." (*Peltz* agt. *Clark*, 5 *Peters*, 481.)

A prior lien is not entitled to prior payment if the party holding it has by his acts displaced it. (12 *Wheaton*, 507).

The payment to plaintiff was in fact a payment on the bid and merged the title. (*James* agt. *Morey*, 2 *Cowen*, 246; *Lansing* agt. *Goelet*, 9 *Cowen*, 346–403; *Spencer* agt. *Ex's of Hartford*, 4 *Wendell*, 381.)

The doctrine that a holder of a prior mortgage will be postponed in payment, if by his acts subsequent parties are injured, is fully sustained in *Lee* agt. *Munroe*, 7 *Cranch*, 366; 1 *Story Eq. Juris.* § 564.)

Thursby's non-compliance with his contract of purchase has caused us to lose our debt.

III. In the next place we ask that the 10 per cent. paid into court upon the first sale should be appropriated as far as it will go to the payment of Mrs. Van Alst's claim.

1. It is, we submit, wholly immaterial whether any contract of sale was made between the Thursbys and the referee.

Willets agt. Van Alst.

The money is in court, to be disposed of by order of the court.

It was not paid in under any mistake.

It could *never* be recovered by those who paid it, even if they held no evidence of title.

If *they* repudiate the sale, they forfeit the money.

No one has ever refused to give them the deed.

They are estopped from taking advantage of their own default.

If one purchase real estate by a verbal contract, and make a payment on account, can he recover it back, the other party not only not being in default, but offering to perform?

2. The sale was perfect and valid in fact.

A memorandum was signed by the party to be bound as required by statute. (2 *R. S.* 316, § 8; 16 *Wendell*, 28; 16 *Wendell*, 460; 21 *Wendell*, 467; 2 *Caines' C. E.* 87.)

The terms of sale were clear, distinct and positive, and were signed by the referee, and the agreement to purchase on those terms was signed by the purchaser.

They are in the usual form; although even if defective in form, a court of equity would reform and direct performance accordingly, and "courts of equity will regard the substance and not the mere form of agreements relating to lands, and will give them the precise effect which the parties intended in furtherance of that intention." (2 *Story Eq. Juris.* § 791.)

3. All the authorities cited on the other side apply to actions where specific performance is sought, and not to judicial sales. The referee acts as the officer of the court, and if he violates his duty the court will compel it. It is wholly unnecessary that he should sign a memorandum to do his duty.

The question here is not whether the Thursbys made a *perfect* contract of sale, but whether they made the bid and

deposited the money which we ask to have applied in payment of the debt.

4. The purchasers not only paid the 10 per cent., but also the plaintiff's claim; entered into and remained in possession for over eight years, holding the only equitable title. (2 *Caines' Cases*, 87.)

They are estopped from questioning the validity of the sale.

5. The orders of court, made December 31st, 1858, and March 6th, 1860, fixed the rights of the parties, and cannot now be questioned.

They in themselves establish and *judicially* determine the validity of the first sale.

IV. The order of December 31st, 1858, was obtained upon the application of the parties who now resist our motion.

It is in full force, and the time to appeal from it has long expired.

That order *must have* been obtained on notice to *all parties* (including Thursby's executors,) because *four of them* made the application.

It is not pretended that notice was *not* given.

It was determined by that order and by the referee's report, on which it was based, that Trask's assignors (the younger Thursbys) then owned the bid, and were entitled to the conveyance or performance of the terms of sale.

V. The estate of the elder Thursby has no interest in the 10 per cent.

As matter of fact that is determined by the order of December 31st, 1858; and it is now too late for them to question it.

The execution and delivery of the bond and mortgage to Mrs. Van Alst affords very strong evidence that Thursby's estate had no longer any interest in the purchase.

The bid, moreover, did not belong to the elder Thursby exclusively, and whatever interest he had in it, as he was

not the sole purchaser, went on his death to his surviving copurchasers, and not to his executors or.heirs at law.

At most all that could so descend would be the one-third of the bid.

VI. Equity in all cases treats the vendor of real estate, where a contract of sale is executed, as the trustee for the vendee of the estate; and the vendee as the trustee of the vendor of the purchase money. (2 *Story Eq. Juris.* § 1,212, § 790.)

Clearly, therefore, John B. Thursby, on being vested with the title to the mortgage by paying the plaintiff and by taking assignments of the bid at the sale became the equitable owner of the land and *trustee* of all *parties* interested in the purchase money.

His assignee Trask is not a *bona fide* purchaser for value and has no greater rights.

His payments to Mrs. Van Alst are shown by Griffin's affidavit, the bond to Mrs. Van Alst and the other papers, to have been made by him as *assignee* solely.

Our application, therefore, comes within the principle of equity governing such cases, to compel the *trustee*, who held undisturbed possession for eight years, to perform a part of his duty as *trustee*, for *our benefit*, of the purchase money; and as he is insolvent, we are not asking too much in demanding that his interest in the judgment and the money paid on the land should be appropriated to our use; as even then we are remediless for the remaining deficiency.

The counsel for Mr. Trask and for the executrix claimed:

I. That the sale to John Thursby and others was not perfected, or binding, and should go for nothing.

By the decree the referee was authorized to sell and convey. He offered the property and received a bid, with a written promise signed by John Thursby and others, to carry out the purchase. Our position is that this sale

should have been made in writing, such sale being within the statute of frauds.

The statute provides (3 *R. S.* 220, § 6) that *no estate or interest in lands shall be created*, granted, assigned, surrendered or *declared*, unless by act or operation of law, or by deed or conveyance *subscribed by the party assigning, &c.*, and (§ 8) that *every contract for the sale of lands* or an *interest in lands*, shall *be void*, unless the contract, or some note or memorandum thereof, expressing the consideration, be in writing and *subscribed by the party by whom the sale is to be made.*

The case comes within one or other of these provisions. If what transpired at the auction when the premises were bid for and struck down, rested in contract, as we shall endeavor to show, then we come within the 8th section. If, however, that was not mere matter of agreement, contract, or bargain, but an actual sale, creating or declaring an interest in the land, then we come within the 6th section.

The sale by the referee was a sale of lands, or of an interest in lands. If John Thursby and associates purchased anything it was an estate or an interest in lands. They acquired an interest in or a power over or concerning lands ; or, we must assume, that the referee, by the act performed, created, granted or declared an estate or interest in lands. If not, what did they purchase or acquire ? What passed to them ? What did the seller part with, surrender, or declare ? Of course, it was an interest in lands burdened with the condition of payment : a present interest defeasible and inchoate, yet an interest in lands.

To this end a writing or conveyance was necessary, and it must have been subscribed by the referee. But the referee made no conveyance, and did not subscribe any grant as required by the 6th section. It will not do, therefore, to call this a sale by the referee so complete as to get rid

of the necessity or existence of a contract for such sale, since, in such view, the 6th section applies.

The words "by act or operation of law" in the 6th section as shown by KENT, Ch. J., in 2 *Caines' R.* 64, have no application to such a sale.

Turning then to the 8th section, it appears:

1st. That the contract must be in writing.

2d. That the consideration must be expressed.

3d. That the paper must be signed by the seller.

The referee was the *seller*, and we admit that if he had signed any memorandum substantially setting forth the transaction, the bidder would have been bound. But nothing of the kind was done.

This statute governs all contracts for the sale of lands or of an interest in lands; all sales by which an interest or estate in lands is to be created or declared.

The most apt words are used, reaching every case: the conveyance is to be in writing, subscribed by the *party* conveying, creating, or declaring the estate or interest; or the contract is to be in writing and subscribed by the *seller*; the words party and seller comprehending sheriff, referee, owner, as the case may be.

The act could not have been more comprehensive. *Every contract*, not every contract save at official sales, or under decrees or judgments, or by sheriffs, masters or referees, but *every contract*. There is no exception or limitation whatever.

Thus, taking these two sections together, you find that no estate or interest in lands can be acquired, that no contract of sale can be made for such estate or interest, save by writing duly subscribed.

Is it a sale *in presenti*, granting, creating or declaring an estate or interest in lands? the 6th section applies.

Is it a contract for such sale or interest, then the 8th section applies. So, whether the referee *sold*, or *contracted to sell*, the case is equally within the statute.

But we submit, with confidence, that the 8th section reaches and governs the case.

The referee was to sell, and to this end it was necessary that he enter into a contract with some purchaser. They were to agree upon the price, hence there must have been an agreement. It was not possible to sell without contracting. The sale was a contract, or it was nothing; a contract of sale; the deed, a deed of bargain and sale.

In foreclosure sales, or in cases where from the nature of the thing there must be delay in payment or in conveying, to the end that a title may be examined, the whole matter necessarily rests in mere contract. Until payment and conveyance the purchaser has not the title or the right of possession, but he has a claim according to the terms of his purchase, as evidenced by the agreement. What, then, would be his condition if there were no contract?

That this statute applies is evident from the facts:

1st. That it is thus comprehensive, including every estate or interest in lands to be created or declared; every contract for the sale of an interest in lands, under all conceivable circumstances.

2d. That the referee was to do the very thing—sell or contract to sell—mentioned in this statute, neither more nor less.

3d. That the act as to sales by foreclosure of mortgages has no provision and gives no direction on the subject, thus leaving the whole matter to the general statute.

4th. That there is no other statutory provision on the subject of selling or contracting for the sale of lands at all in conflict with or modifying this statute.

In *Ely* agt. *Ormsby* (12 *Bar. S. C. R.* 571), Mr. Justice PRATT, speaking of a sale of personal property, and referring to 5 *Hill*, 200, and 1 *Comst.* 261, says, "*words alone will not suffice*," and we but appropriate this as applicable to sales of real estate. The referee was *to sell*; and for this

mere words would not suffice. Yet, on his part, we have mere words. He never put pen to paper on the subject of this sale. The counsel reminds us that John Thursby and his associates signed a promise to complete the purchase, and that there were the usual terms of sale. Let us examine this matter, and see how far all that is material; or, rather, permit us to submit the distinct proposition that such signing and terms of sale are to be put aside, as having nothing whatever to do with the question before the court.

1st. *As to the written promise.*

The sale being within the statute, it is not material what the purchasers signed, or whether they signed anything; *it is the seller who is to subscribe.* The practice of signing such a promise obtained before the change in our statute; then the contract was to be signed by *the party to be bound thereby.* Then such paper so signed was material. We need not say that it was necessary, because, as no action need have been brought on such paper or contract, the thing which that statute prohibited, the court could order the sale to be completed. But after the change of our statute, such signed promise lost its office and significance utterly. Thenceforth it had no more bearing upon the question, under the statute, than a piece of blank paper. It is now an idle form. The statute which declares the contract *void* unless it be subscribed by the *seller*, cannot be satisfied by having the purchaser sign even the most formal documents. The question would equally remain whether a sale had been made; whether the seller had subscribed the contract? So, for all purposes, this paper is to be disregarded.

2d. *As to the printed terms of sale.*

Such papers have been found convenient in sales by sheriffs, masters and auctioneers, and belong as much to one as to the other. A sale of mortgaged premises without such a paper would be as valid as with it. It has

nothing to do with the statute—is an utter stranger to the statute.   It does not add to the validity of the sale, except in cases where it is annexed to or incorporated in the contract subscribed by the seller of the land.

In *First Baptist Ch.* agt. *Bigelow* (26 *Wend.* 28), the sale of a pew by an auctioneer was held void for want of the proper written memorandum or contract under the statute, and this though at the time of the auction a written or printed advertisement of the sale, containing the conditions, was read to the purchaser.

In *Hyde* agt. *Whitehouse* (7 *East R.* 558), the auctioneer had a printed catalogue and a paper containing the conditions of the sale.   He wrote on the catalogue, opposite to the article bid for, the price and name of the purchaser. The conditions were not annexed, and the contract was held incomplete.

In *Tallman* agt. *Franklin* (4 *Kernan*, 584), the terms of sale were actually attached to the memorandum of sale, signed by the auctioneer, and so made part of the contract.

In *Bragden* agt. *Bradbear* (12 *Vesey*, 472), the master of the rolls, in considering the question whether auction sales were within the statute, says, that although ordinarily the terms and conditions are reduced to a certainty by a written or printed particular, yet if it be true that the statute does not affect any sales at auction, the whole of the terms might be left to parol evidence at the hazard of all the uncertainty which the statute intended to exclude.

So far as this question has received judicial notice, it may be safely said that no adjudication has been made adverse to our position in respect to sales by either sheriffs or referees.   It was formerly supposed that a different rule applied to sales by masters.

In *Atty. Gen.* agt. *Day* (1 *Ves.* 218), Lord HARDWICKE stated that *judicial sales* were not within the statute, and

the case has been referred to by writers as illustrative of the English chancery practice.

The bill in that case was for settlement of John Eldridge's estate under a will. He had devised land; then by a codicil bequeathed a sum of money instead to a charity. The court directed the master to devise a scheme for carrying out the bequest. He reported a scheme for laying out this money in land. On the hearing it was questioned whether the arrangement, agreement, or scheme —whatever it was—was binding under the statute.

Lord HARDWICKE mentions several cases where he thought the statute did not apply, including some since ruled otherwise ; and says that masters' sales, *judicial* sales, are not within the statute ; that the judgment of the court takes it out of the statute.

*Sugden* (1 *Vend & P.* 92) refers to this case and says: "a sale by a master is not within the statute of frauds, and after confirmation of the master's report of the best purchaser, the sale will be carried into effect ;" that " the judgment of the court taking it out of the statute."

In *Parsons on Contracts* (2 *Vol. p.* 292, *note* 2) it is said that the doctrine formerly prevailed that sales of land by sheriffs and by masters in chancery under decrees of the court were not within the statute. " But this has since been overruled, and sales of this description are now put upon the same footing with other auction sales."

Auction sales are clearly within the statute. (10 *Paige R.* 526 ; 8 *Bar. S. C. R.* 130 ; 1 *Duer R.* 89 ; 4 *Kernan,* 584 ; 12 *Vesey,* 472.)

In *The National Fire Ins. Co.* agt. *Loomis* (11 *Paige R.* 433) the chancellor said that the question whether masters' sales were within the statute did not arise, but that if such sales are within the statute (as to which he does not intimate a doubt) the master's report would be a compliance. Beyond this casual reference to the subject we

do not find that the late chancellor had occasion to notice it.

Thus then we submit that as the referee did not subscribe the contract of sale, no valid sale or contract was made.

II. The legal representatives of John Thursby, the estate being represented in the matter and before the court for the first time, may be heard without prejudice.

The four sons, named in the order of December, 1858, were executors, but that order relates to their personal character, not to them as executors; and Mrs. Thursby, the executrix, was ignorant of the proceeding.

The representatives, as such, have never recognized the sale as valid or waived a return of the moneys thus deposited, and nothing can be taken by implication against them.

III. The deposit so made by John Thursby should be paid over to the executrix, &c.

It belongs to the estate. It was doubtless deposited in good faith, and with intent to complete the purchase. It was deposited by John Thursby on the assumption that he was bound; that a valid contract had been made, duly subscribed by the referee. This was a mistake of fact.

The reason why the part performance known to a court of equity as aiding a parol contract of purchase does not arise by payment of the consideration money merely, is that the money can be restored. We are here to ask such restoration. (3 *Sand. Ch. R.* 279 ; 4 *Cow. R.* 403 ; 3 *Johns. Ch. R.* 283 ; 2 *Hill's R.* 486.)

IV. As to the order of December, 1858.

It gave the four Thursbys the privilege of carrying out the sale in a certain manner. It was simply permissive, neither creating nor imposing any obligations on them.

If it had been intended to bind the Thursbys to pay or to carry out the purchase, affirmative words would have

been used to that effect. None are used. (*Acker* agt. *Ledyard*, 8 *Bar. R.* 515.)

V. The amount of the decree with interest should be paid to the representatives of the plaintiff.

The petitioner, considering that John B. Thursby, to whom the decree had been assigned, was a party to the order ef December, 1858, and that the leave given by that order was not availed of, thinks that a penalty should be inflicted to the extent of the decree. To this claim there are several answers.

1st. Not so, because of the permissive nature and terms of the order itself.

2d. Not so, because on that very order it is provided that the amount of the decree should be paid to John B. Thursby.

3d. Not so, because this court has not the power to so direct. (*a*). By the decree it is provided that certain sums shall be paid to the plaintiff out of the proceeds. This provision is binding and conclusive. Mr. Hull, the petitioner, was a party to that decree. His attempt now to amend the decree or to make a new one in that respect is untimely and untenable. (*b*.) By the statute it is expressly provided that the proceeds to the amount of the decree shall be applied to satisfy the plaintiff. (2 *Rev. S.* 272, § 89.) This statute is to be obeyed. (*c*.) The only power given to the court in respect to which parties can be heard and orders granted applying the moneys, *is as to the surplus*. (*d*.) The claim thus interposed is inequitable.

When Mr. Hull took his mortgage, this plaintiff's and Mrs. Van Alst's mortgages were prior liens. It is to be supposed that he knew the property and its value, and thus by his own act and with full knowledge he acquired the relation he now bears—*that of the third incumbrancer*.

He does not, therefore, come within any rule of equity ever applied in disturbing the relation or priority of liens. Those are cases where such relief has been granted, as

where a person takes a mortgage for value, without notice of an existing unrecorded mortgage, or where those having liens were present and induced or permitted such person to take a mortgage under the mistaken belief that the property was unincumbered, and the like. But there is no case where that has been done after a decree and sale on the prior mortgage, or in favor of one who knew that the mortgage he was taking was a subsequent lien.

SCRUGHAM J. One of the questions on this motion is as to the application of the money which was paid to the referee on the first sale of the mortgaged premises made pursuant to the judgment in this action.

The counsel for those who now represent the bidders claim that the sum deposited on the sale should be returned to them on the ground that the sale was void, because no contract in writing, or note, or memorandum thereof expressing the consideration was signed by the referee.

This brings up the question whether a sale by a referee under and in pursuance of a judgment of the court, rendered in an action for the foreclosure of a mortgage is within the statute of frauds.

It is doubtless within that section of the statute which provides that no estate or interest in lands other than leases for a term not exceeding one year shall be granted unless by act or operation of law, or by deed or conveyance in writing subscribed by the party granting the same or by his lawful agent, thereunto authorized by writing; and the title to the land will not vest in the purchaser at such sale until such a conveyance by the referee has been executed and delivered.

The authorities cited in support of the proposition that judicial sales are within the statute only go to this extent.

*Simonds* agt. *Catlin*, 2 *Caines*, 61, and *Jackson* agt. *Catlin*, 2 *Johns*. 248, were both acts of ejectment; in the first of which the plaintiff claimed as purchaser at a sheriff's sale

under execution, and was defeated because he did not pro-
duce any deed or note in writing signed by the sheriff, and
passing the estate; and, in the second, the defendant
claimed as purchaser in a similar case, and produced the
execution and return of a deed executed by the sheriff to
him and left by the sheriff with a third person as an es-
crow to be delivered to the purchaser on payment of the
purchase money; and it was held that the estate did not
pass by the deed for want of delivery, nor by the return
for want of sufficient certainty as to the lands sold and
the purchaser.    The counsel in referring to this case say
that the sale failed because "the sheriff's return did not
contain all the statutory requirements to constitute a con-
tract, and this too although the sheriff had executed a
deed and left it as an escrow;" but I do not so under-
stand the decision.

The sufficiency of the contract of sale was not ques-
tioned in either of these cases, but only the necessity of
its consummation by conveyance to pass the estate to
which it referred; and the learned judge who delivered
the opinion of the court in both cases distinctly indicates
that section of the statute of frauds which is thereby
held to be applicable to such sales by saying in the first
case : "It appears to us that sheriffs' sales must be within
the statute of frauds which declares that no estates of
freehold or term of years shall be granted but by deed or
note in writing, or by act or operation of law."

The reasons upon which this conclusion is rested are
drawn from the manifest public inconvenience and great
uncertainty as to titles which would result from allowing
the sale itself and the return endorsed on the execution to
constitute sufficient evidence of title; and they will not
sustain a conclusion that the contract of sale is void be-
cause the sheriff omits to subscribe a memorandum of it,
as none of these evils could result from such an omission.

The transaction between a referee, executing the

judgment of the court by a sale in an action of foreclo-
sure and the successful bidder, cannot strictly be regarded
as a contract. The referee, acting only as the minister of
the court, assumes for himself no obligation to complete
the sale, and can impose none upon the court which he
represents. It is always within the power and often be-
comes the duty of the court to set aside these sales, and
this is entirely inconsistent with the idea that they are
contracts of the court, for a contract is an act which con-
tains a perfect obligation which cannot be annulled at the
pleasure of the party bound by it.

Moreover, a court has no such legal entity as capacitates
it to make a contract, for it is neither a person nor a cor-
poration—can neither sue nor be sued.

It has just been held in this district that an action cannot
be maintained against the purchaser at a foreclosure sale,
on the memorandum subscribed by him at the foot of the
conditions of sale, stating that he had purchased at a cer-
tain price, and that he agreed to comply with the condi-
tions; and the learned justice who delivers the opinion of
the court says of the agreement of the purchaser: "If it
is to be called a contract at all, it is a contract with the
court. The sale is made by the order of the court, and is
under its control, and not that of any party to perform or
to rescind. In truth, however, the word contract is some-
what inartificially used when it is applied, as it has been,
by judges to such papers. The memorandum signed by
the defendant was only a quasi contract; it was in reality
a submission to the jurisdiction of the court in the fore-
closure suit as a purchaser under the judgment. It is
easy to see that it lacked the most essential elements of a
contract, not only parties, but mutuality and consideration.
It contained, or was intended to contain, an express con-
sent to the exercise of the powers which we have seen
courts of equity assert *ex proprio vigore* over purchasers,
and it is doubtful if it added anything to the jurisdiction

or authority of the court in this particular. There can certainly be no suit maintained upon it as an express stipulation with any person whatever." (*Miller* agt. *Colyer*, *decided 1st Monday of March*, 1862 ; *MS. opinion of* EMOTT, J.)

The sale by the referee is a proceeding in the action, and the purchaser, by becoming such, submits himself to the jurisdiction of the court as to all matters connected with the sale or relating to him in the character of purchaser. (*Requa* agt. *Rea*, 2 *Paige*, 339.)

His rights and liabilities do not grow out of a contract, but arise from this proceeding and submission; and as the referee makes no contract, the provision of the statute of frauds, requiring contracts for the sale of lands to be in writing and subscribed by the party by whom the sale is to be made, is not aplicable.

The failure of the purchasers on the first sale to complete their purchase, rendered a new sale necessary, and as the sum for which the mortaged premises were sold at the last sale is greatly less than that at which they were struck off to them, the percentage which they paid into court on their bid must be applied, as far as it will go, to the payment of that deficiency.

The order of December 31st, 1858, and the report of the referee upon which it was founded, determined that all rights under the first bid then belonged to John B. Thursby, Robert G. Thursby, James S. C. Thursby, and Samuel J. Thursby, and it appears that John B. Thursby was then the owner of the judgment in this action and of the mortgage foreclosed by it.

All of these persons afterwards became insolvent, and made a general assignment of all their property to Charles H. Trask, including not only all the rights they possessed under the bid, but also, by the assignment of John B. Thursby, the judgment and mortgage.

The holder of the third mortgage upon the premises,

who became the purchaser at the second sale, alleges that the purchase money will be insufficient to pay the amounts required to be paid by the judgment in this action, the mortgage held by Mrs. Van Alst, as executrix, and his mortgage; and that as the only parties liable for the deficiency arising on the resale are insolvent, he will lose the whole amount due him, unless it be paid out of the purchase money before the amount due on the mortgage to foreclose which the action was commenced; and he claims that in equity such direction should be made, as the loss will be occasioned by the failure of the owner of the judgment and mortgage to comply with the obligations he assumed as assignee of the bid.

The judgment in an action for the foreclosure of a mortgage determines the amount due to the plaintiff, and his right to its payment out of the proceeds of the sale of mortgaged premises, and if regularly obtained, I do not think that the court at special term can change it in these important particulars.

The payments of interest on the mortgage held by Mrs. Van Alst, as executrix, were voluntary, and it is difficult to understand why they were made, if not to prevent proceedings being taken to enforce her claim upon the premises.

They were made by the owners of the bid, whose failure to comply with the conditions of the sale caused so large an amount of interest to accrue, and they extinguished the lien of the mortgage to their amount. It would not be equitable to revive it in favor of the defaulting bidders or their assigns, to the prejudice of the holder of the last mortgage.

An order must be entered directing that the moneys in the hands of the referee, arising on the first sale, together with all of the proceeds of the second sale, be applied in the first place to the payment of the various sums directed by the judgment in this action to be paid and allowed out

of the proceeds of the sale of the mortgaged premises; in the next place to the payment of the amount due on the mortgage to Elizabeth Van Alst, as executrix, &c., and in the next place to the payment of the amount due on the mortgage to Hezekiah D. Hull, and that if any surplus remain after such payments, it be brought into court. That the purchaser at the second sale, viz: the defendant, Hezekiah D. Hull, shall (if Elizabeth Van Alst, executrix, &c., shall consent to receive the mortgage hereinafter mentioned,) be relieved from the payment in cash of any greater sum than that which shall be sufficient to pay such surplus, if any, and, with the moneys now in the hands of the referee, the various sums directed to be paid and allowed by the judgment. And that on such payment, the referee be authorized to deliver to him his deed of the mortgaged premises, upon receiving his bond and mortgage to Elizabeth Van Alst, executrix, &c., for the moneys payable by the referee to her, to be a first lien upon the mortgaged premises, and his receipt for the moneys payable by the referee to him.