GEORGE WADSWORTH, Appellant, *v.* LOUISA L. LYON et al.,
Respondents.

Where a mortgagor sells the land mortgaged, receiving the full considera-
tion therefor, and conveys the same, not subject to the payment of the
mortgage, although the deed contains no covenant of title on the part of
the grantor, he remains the principal debtor, and the land simply
security for the debt. (MILLER and DANFORTH, JJ., dissenting.)

The primary liability of the mortgagor to pay the bond secured by the
mortgage cannot be shifted to the land, save by a conveyance thereof
subject to its payment, or by deducting the amount from the considera-
tion for the conveyance, or by some agreement between the parties
changing such liability. (MILLER and DANFORTH, JJ., dissenting.)

The purchaser or his grantee may pay the bond to save the land, and en-
force it as surety against the obligor ; and this although a judgment of
foreclosure of the mortgage has been rendered; as against the surety
the bond is not merged in the judgment. (MILLER and DANFORTH, JJ.,
dissenting.)

Upon foreclosure sale, where the lands had been conveyed by the mort-
gagor as above specified, plaintiff bid off the lands for more than the
amount due upon the judgment. No note or memorandum or report of
the sale was made. Plaintiff paid no part of his bid, and it was never
demanded of him ; he thereafter purchased and received a con-
veyance of the land ; he also paid the amount called for by the fore-
closure judgment and received an assignment thereof and of the bond,
and then by leave of the court brought suit upon the bond. *Held*
(MILLER and DANFORTH, JJ., dissenting), that the foreclosure sale, even if
binding upon the plaintiff therein, did not affect the rights of defendants
and furnished no defense ; as they were bound to pay the bond and could
not ask to have the land sold to discharge the debt, they were in no way
damaged by and acquired no equities because of the failure to complete
the sale.

Also *held* (MILLER and DANFORTH, JJ., dissenting), that it was not essen-
tial for plaintiff to set up his equities in the complaint; that he had a
right to sue simply as assignee of the bond, and to prove his equities in
answer to any defense sought to be established by defendants.

(Argued June 20, 1882; reargument ordered February 6, 1883 ; re-argued
June 6, 1883; decided October 2, 1883.)

APPEAL from judgment of the General Term of the Su-
perior Court of the city of Buffalo, entered upon an order
made May 14, 1880, which affirmed a judgment in favor of

defendants, entered upon a decision of the court on trial at Special Term.

This action was upon a bond. The material facts are stated in the opinion.

*George Wadsworth* for appellant. The defendant, Louisa L. Lyon, although a married woman, is liable on the bond, because she gave it for the purchase-money of land which was conveyed to her. (*Tiemeyer* v. *Turnquist,* 85 N. Y. 516; *Westervelt* v. *Ackley,* 2 Hun, 258; 62 N. Y. 505, 508; *Siegel* v. *Johns,* 58 Barb. 620; *Cashman* v. *Henry,* 75 N. Y. 103; *Ballin* v. *Dillaye,* 37 id. 35.) The mortgage was a mere chose in action, it gave no legal estate or title in or to the land, but was merely a lien thereon. (*Trustees, etc.,* v. *Wheeler,* 61 N. Y. 88.) Where a bond and mortgage are executed simultaneously, the bond is the principal debt, and the mortgage only the incident or collateral to it. (*Merritt* v. *Bartholick,* 47 Barb. 253; 36 N. Y. 44; *Cumberland* v. *Coddington,* 3 Johns. Ch. 16, 229, 257; *Cooper* v. *Newland,* 17 Abb. Pr. 342; *Barnes* v. *Mott,* 64 N. Y. 397; *Bentley* v. *Vanderheyden,* 35 id. 677; *Johnson* v. *Zink,* 52 Barb. 396; *Marsh* v. *Pike,* 10 Paige, 595; *Cherry* v. *Monroe,* 2 Barb. Ch. 618; *Russell* v. *Pistor,* 7 N. Y. 171; Davis on Mortgages, 92, 337; Jones on Mortgages, § 741; *Hunt* v. *Amidon,* 4 Hill, 345.) The release of the land from the lien of the mortgage and judgment, it being security only, does not discharge the defendants from liability on the bond. (Jones on Mortgages, § 741; *Bentley* v. *Vanderheyden,* 35 N. Y. 677; *Tripp* v. *Vincent,* 3 Barb. Ch. 613; *Southworth* v. *Scofield,* 51 N. Y. 513.) This action can be maintained because the plaintiff, whose land was security for defendant's debt, had a right to pay and be subrogated to the other securities and to the benefit of the bond, and this without respect to the covenants in the deed. (Jones on Mortgages, §§ 874, 876, 882; *Barnes* v. *Mott,* 64 N. Y. 397, 402; *Dings* v. *Parshall,* 7 Hun, 522; *Ellsworth* v. *Lockwood,* 42 N. Y. 89, 98; *Averill* v. *Taylor,* 8 id. 44, 51; *Spiegelmeyer* v. *Crawford,* 6 Paige, 254; *Hayes*

v. *Ward,* 4 Johns. Ch. 123; *Jenkins* v. *Cont. Ins. Co.,* 12
How. 66; *Mathews* v. *Aikin,* 1 N. Y. 595; *Cole* v. *Malcolm,*
66 id. 363; *Wells* v. *Mann,* 45 id. 327; *Edson* v. *Dillaye,* 17
id. 158.)   Beck having paid Lyon the full consideration this
leaves the bond the primary security.   (Thomas on Mortgages,
92, 337; *Barnes* v. *Mott,* 64 N. Y. 397.)   The action was
properly brought; it was not necessary to set out in the com-
plaint that Louisa L. Lyon is a married woman and thus avoid
that defense.   (Code of Civil Procedure, §§ 1206, 450; 3 R. S.
[6th ed.] 161, § 84; *Erecking* v. *Rolland,* 53 N. Y. 422.)
The offering of the property for sale by the sheriff and the bid
of the plaintiff was not a sale; it did not bind the parties.
(*McComb* v. *Wright,* 4 Johns. Ch. 659; *Thompson* v.
*Diamond,* 3 Edw. Ch. 315; *Hewlett* v. *Davis,* id. 337.)   The
plaintiff in the foreclosure suit had a perfect right to treat the
sale as a nullity and sell his claim, or accept payment of it, or
readvertise the property for sale.   (*Graham* v. *Bleakie,* 2
Daly, 55; *Mitchell* v. *Bartlett,* 52 Barb. 319; *Riggs* v. *Purcell,*
74 N. Y. 370; *Cherry* v. *Monroe,* 2 Barb. Ch. 618; *Bache* v.
*Purcell,* 51 How. Pr. 270.)   The debt of the principal upon
the bond is not merged in the foreclosure judgment; the facts
of the case do not bring it within the doctrine of merger or
former adjudication.   (*Dunham* v. *Bower,* 77 N. Y. 76;
*Dunkley* v. *Van Buren,* 3 Johns. Ch. 330; 2 R. S. [2d ed.]
118, §§ 158, 159; 3 id. [2d ed.] 673, revisers' notes; *McCarthy*
v. *Graham,* 8 Paige, 480; *Cobb* v. *Thornton,* 8 How. Pr. 66;
*B'k of Rochester* v. *Emerson,* 10 Paige, 115; id. 359; *Han-
over F. Ins. Co.* v. *Tomlinson,* 3 Hun, 630; 58 N. Y. 215,
216; Jones on Mortgages, § 741; *Bentley* v. *Vanderhuyden,*
35 N. Y. 677; *Tripp* v. *Vincent,* 3 Barb. Ch. 613; *South-
worth* v. *Schofield,* 51 N. Y. 513; *Globe Ins. Co.* v. *Lansing,*
5 Cow. 380; *Lansing* v. *Goelet,* 9 id. 346; *Dunkley* v. *Van
Buren,* 3 Johns. Ch. 330; *Jones* v. *Conde,* 6 id. 77; *Drake* v.
*Mitchell,* 3 East, 252; *Chipman* v. *Martin,* 13 Johns. 240;
*B'k of Chenango* v. *Hyde,* 4 Cow. 567; *Clapp* v. *Meserole,* 38
Barb. 661; 1 Keyes, 281; *Bates* v. *Nellis,* 5 Hill, 651; *Day*
v. *Leal,* 14 Johns. 404; *Hawks* v. *Hinchcliff,* 17 Barb. 492;

*Davis* v. *Anable*, 2 Hill, 339; *Jackson* v. *Shafer*, 11 Johns. 512; *Butler* v. *Miller*, 5 Denio, 149; 1 N. Y. 496; *Bates* v. *Nellis*, 5 Hill, 651; 1 Chitty's Pl. [10th Am ed.] 105; *Ainslie* v. *Wilson*, 7 Cow. 662; *Day* v. *Leal*, 14 Johns. 404; *Jackson* v. *Shafer*, 11 id. 513; *Mumford* v. *Stocker*, 1 Cow. 178; 2 R. S. [2d ed.] 118, 119, §§ 161, 162; *Corn Ex. Ins. Co.* v. *Babcock*, 57 Barb. 231; *First Nat. B'k, etc.*, v. *Morgan*, 6 Hun, 346; *Clapp* v. *Meserole*, 1 Keyes, 281, 287; *McLean* v. *Tompkins*, 18 Abb. 24; *Rogers* v. *Ivers*, 23 Hun, 424; *Pardee* v. *Van Anken*, 3 Barb. 529, 542; *F. L. & T. Co.* v. *Seymour*, 9 Paige, 538; *Smart* v. *Bement*, 4 Abb. Ct. of App. Dec. 253; *Towers* v. *White*, 10 Paige, 395; *N. Y. L. I. Co.* v. *Devlin*, 3 Law Bull. 99 : *Key* v. *Whittaker*, 44 N. Y. 565; *Lansing* v. *Hadsall*, 26 Hun, 619; *Payn* v. *Grant*, 23 id. 134; *Hall* v. *Ditson*, 55 How. 19; *Dusenbury* v. *Fisher*, 15 J. & S. 482; *Albany City S. I.* v. *Burdick*, 57 N. Y. 40; *Barth* v. *Burt*, 17 Abb. Pr. 349; *Sweet* v. *Tuttle*, 14 N. Y. 465, 470, 473; *Smith* v. *Smith*, 79 id. 634; *Campbell* v. *Consalus*, 25 id. 613, 616; *Bissell* v. *Kellogg*, 60 Barb. 617; *People* v. *Johnson*, 38 N. Y. 63; *Woodgate* v. *Fleet*, 44 id. 1; *Burwell* v. *Knight*, 51 Barb. 267; *Maloney* v. *Horan*, 49 N. Y. 111; 12 Abb. [N. S.] 289; *Ryers* v. *Sippey*, 25 Wend. 431; *Candee* v. *Burke*, 1 Hun, 546; *E. N. Y. & J. R. R. Co.* v. *Elmore*, 53 N. Y. 624; *People* v. *Dennison*, 84 id. 272; *Spelman* v. *Terry*, 74 id. 448; *Webb* v. *Buakalew*, 82 id. 555; *Remington Paper Co.* v. *Dougherty*, 81 id. 474, 489, 490; *Clemens* v. *Clemens*, 37 id. 59.) When there are two separate and distinct contracts or two separate causes of action, a judgment on one is no bar to an action on the other, although they arise out of the same subject-matter. (*Millard* v. *M. K. & T. R. R. Co.*, 86 N. Y. 441; *Stowell* v. *Chamberlain Co.*, 60 id. 272; *Douglass* v. *Ireland*, 73 id. 100, 107; *Perry* v. *Dickerson*, 85 id. 345; *Campbell* v. *Consalus*, 25 id. 613; *O'Dougherty* v. *Remington Paper Co.*, 81 id. 496; *Dawley* v. *Brown*, 79 id. 390; *Knauth* v. *Bassett*, 34 Barb. 31; *Vail* v. *Vail*, 7 id. 226; *Mason's Ex'rs* v. *Alston*, 9 N. Y. 28; *Campbell* v. *Hall*, 16 id. 575; *Embury* v. *Connor*, 3 Comst. 511, 522; *Bur-*

*well* v. *Knight,* 51 Barb. 267; *White* v. *Coatsworth,* 2 Seld. 137, 139.) The foreclosure judgment is not a bar to this action, because the foreclosure suit would not, while pending, bar an action on the bond. (*Suydam* v. *Bartle,* 9 Paige, 294; *Globe Ins. Co.* v. *Lansing,* 5 Cow. 381; Code of Civil Procedure, § 488, subd. 4; *Averill* v. *Patterson,* 10 N. Y. 500; *Ritter* v. *Worth,* 58 id. 627.) The effect of the foreclosure was simply to bar the equity of the mortgagor and his grantees in the land; it had no operation upon the rights of the defendants as between themselves. (*Hoyt* v. *Martense,* 16 N. Y. 231; *Malloney* v. *Horan,* 49 id. 111, 116; *R. P. Co.* v. *Dougherty,* 81 id. 474; *Porter* v. *Kingsbury,* 77 id. 164; Greenleaf on 'Evidence, §§ 528, 529, 530; *Quackenbush* v. *Ehle,* 5 Barb. 469; *Robertson* v. *Smith,* 18 Johns. 474–5.) The surety could not have his rights against his principal adjudicated in *Fellows* v. *Lyon,* because during the pendency of that suit he had no right of action to be adjudicated. (*Powell* v. *Smith,* 8 Johns. 249; *Bradley* v. *Beerwell,* 3 Denio, 61, 66; *Rodman* v. *Hedden,* 10 Wend. 499; *Hannay* v. *Pell,* 3 E. D. Smith, 432; *Halsey* v. *Reed,* 9 Paige, 446.) The abandonment of a sale is no objection to the subrogation of a defendant in the place of the plaintiff. (*McLean* v. *Tompkins,* 18 Abb. Pr. 24; *Hayes* v. *Ward,* 4 Johns. Ch. 123; *Hunt* v. *Amidon,* 4 Hill, 345; *Cole* v. *Malcolm,* 66 N. Y. 363; *Ellsworth* v. *Lockwood,* 42 id. 89, 98; 2 Jones on Mortgages, p. 135, § 1087; *Patterson* v. *Birdsall,* 6 Hun, 632; 64 N. Y. 294.) The surety is entitled to recover all that he was compelled to pay. (*Miller* v. *Winchell,* 70 N. Y. 439; *Mills* v. *Watson,* 1 Sweeney, 379.) The plaintiff, being a surety, has a right to buy the bond and recover on it, even after the judgment of foreclosure. (*Lewis* v. *Palmer,* 28 N. Y. 271; *Goodyear* v. *Watson,* 14 Barb. 481; *Cuyler* v. *Ensworth,* 6 Paige, 32; *Alden* v. *Clark,* 11 How. 209; *Kelsey* v. *Bradbury,* 21 Barb. 531; *Corey* v. *White,* 3 id. 12, 16; *Marsh* v. *Benedict,* 14 Hun, 317; *Bennett* v. *Cook,* 45 N. Y. 268; *McKernan* v. *Fraser,* 84 id. 105; *Bangs* v. *Strong,* 4 id. 315; *Ellsworth* v. *Lockwood,* 42 id. 89; *LaFarge* v. *Herter,*

11 Barb. 159 ; affirmed, 9 N. Y. 241 ; *Townsend* v. *Whitney*, 15 Hun, 93, 95 ; affirmed, 75 N. Y. 425 ; *Champney* v. *Coope*, 34 Barb. 539 ; 32 N. Y. 543 ; *Harbeck* v. *Vanderbilt*, 20 id. 395 ; Jones on Mortgages, § 882, pp. 715, 716 ; *Marsh* v. *Pike*, 10 Paige, 595 ; *Halsey* v. *Reed*, 9 id. 446 ; *Rubens* v. *Prindle*, 44 Barb. 336 ; *Johnson* v. *Zink*, 52 id. 396 ; *Russell* v. *Pistor*, 7 N. Y. 171 ; *Trotter* v. *Hughes*, 12 id. 74, 78 ; *Comstock* v. *Drohan*, 8 Hun, 373 ; 71 N. Y. 9 ; *Ayers* v. *Dixon*, 78 id. 318 ; *Vanderkemp* v. *Shelton*, 11 Paige, 28 ; *Tice* v. *Annin*, 2 Johns. Ch. 125 ; *Cherry* v. *Monroe*, 2 Barb. Ch. 618 ; *Ferris* v. *Crawford*, 2 Denio, 595 ; *Bentley* v. *Vanderheyden*, 35 N. Y. 677, 680 ; *Watts* v. *Crawford*, 11 Paige, 470 ; *Matthews* v. *Aikin*, 1 N. Y. 595 ; *Burwell* v. *Knight*, 51 Barb. 267 ; *Norton* v. *Coons*, 3 Denio, 130 ; *Miller* v. *Winchell*, 70 N. Y. 437, 440.) The right of subrogation does not depend upon contract, but upon principles of natural justice and equity. (*Mathews* v. *Aikin*, 1 N. Y. 595, 600 ; *Hays* v. *Ward*, 4 Johns. Ch. 130 ; *Bangs* v. *Strong*, 4 N. Y. 324 ; *Townsend* v. *Whitney*, 75 id. 432.) The payment by the surety was not a payment or extinguishment of the debt ; it was merely a redemption of the land from the debt ; he had a right to redeem ; the creditor accepted the redemption ; the defendants had no rights which could be prejudiced thereby, and no right to object thereto. (2 Jones on Mortgages, p. 110, § 1052 ; *Bache* v. *Purcell*, 51 How. Pr. 270 ; *Bentley* v. *Vanderheyden*, 35 N. Y. 677.) A purchaser of lands (even by executory contract) has a right to pay off a mortgage and be subrogated to all the rights of the mortgagee. (*Tompkins* v. *Seeley*, 29 Barb. 212 ; *McLean* v. *Tompkins*. 18 Abb. Pr. 24 ; *Smith* v. *Robertson*, 89 N. Y. 555.) The judgment in *Fellows* v. *Lyon* does not bar this action by the surety, because he was not bound to set up his claim against his principal and co-defendant in that action, even if he could have done so. (*Brown* v. *Gallaudet*, 80 N. Y. 413 ; Code, § 274 ; New Code, § 1204.) The doctrine of former adjudication or suit pending being a bar is strictly construed. (*Porter* v. *Kingsbury*, 77 N. Y. 164.)

*Grover Cleveland* and *Samuel Hand* for respondents. It' can make no difference that the judgment in the foreclosure suit has never been executed by a sale of the land, and the exact amount of the liability of the respondent been fixed. (*Morris* v. *Morange*, 38 N. Y. 172 ; *Chamberlain* v. *Dempsey*, 36 id. 144 ; *Lockwood* v. *Fawcett*, 17 Hun, 146 ; *Smith* v. *Smith*, 79 N. Y. 634 ; *Jordan* v. *Van Epps*, 85 id. 427.) The adjudication upon the defendant's liability in the foreclosure suit was necessarily *res adjudicata* here, and the cause of action merged therein. (*Smith* v. *Smith*, 79 N. Y. 634 ; *Tuska* v. *O'Brien*, 68 id. 446 ; *King* v. *Spaulding*, 3 Barb. 341.) It makes no difference that there were other defendants in the original suit. (*Dows* v. *McMichael*, 6 Paige, 130.) It makes no difference that the judgment in the foreclosure suit has never been executed by a sale of the land and the exact amount of the liability of the respondent fixed ; it was final and merged the bond. (*Morris* v. *Morange*, 38 N. Y. 172 ; *Chamberlain* v. *Dempsey*, 36 id. 144 ; *Lockwood* v. *Fawcett*, 17 Hun, 146 ; *Smith* v. *Smith*, 79 N. Y. 634 ; *Jordan* v. *Van Epps*, 85 id. 427.) The Revised Statutes abolished all implied covenants in deeds of the fee. (1 R. S. 738, § 140 ; 3 Washburn on Real Property [3d ed.], 380.)

EARL, J. On the 1st day of May, 1868, Bridget O'Day and her husband sold and conveyed certain lands to the defendant, Louisa L Lyon, and, to secure a part of the purchase-money, she and her husband, James S. Lyon, executed to Mrs. O'Day a bond conditioned to pay the sum of $4,000, and Mrs. Lyon executed and delivered to Mrs. O'Day her mortgage on the lands as collateral security for the payment of the bond. On the 12th of June, 1868, Mrs. O'Day assigned the bond and mortgage to one Fellows, guaranteeing payment thereof. On the 17th day of January, 1873, Mrs. Lyon, by a deed, in which her husband joined with her as grantor, conveyed the lands to Mrs. Beck, wife of John Beck, which deed contained a covenant of warranty on the part of Mr. Lyon alone. The consideration of the conveyance was $10,000, which was the full

consideration for the lands.   Mrs. Beck did not assume the payment of the mortgage to Mrs. O'Day, and the conveyance was not subject to the payment of the mortgage, which was in no way mentioned in the deed.

After this conveyance Mr. and Mrs. Lyon remained the principal debtors, and the lands were simply security for the debt due upon the bond.   Mrs. Beck owned the lands charged with the debt of Mr. and Mrs. Lyon, which, as between her and them, they were bound to pay. (*Barnes* v. *Mott*, 64 N. Y. 397, 402 ; 21 Am. Rep. 625 ; Thomas on Mortgages, 92, 94.) The primary liability of the obligors to pay the bond could not be shifted to the lands, except by a conveyance of the lands subject to the payment of the mortgage ; or by deducting the bond from the consideration of the conveyance, or by some agreement between the grantors and grantee, charging the primary liability upon the grantee or the lands leaving, as between them, the grantors to stand as mere sureties for the bonded debt.   If, while Mrs. Beck owned the lands, she had been compelled to pay the debt secured by the mortgage, she could have recovered the amount paid by her of the principal debtors, or she could have claimed subrogation to the rights of the holder of the mortgage, at the time of payment, and then enforced the bond against the principal debtors.   She would have had these remedies, not because of the deed to her, nor by virtue of any implied covenant therein, but because, her lands standing as security for the debt of Mr. and Mrs. Lyon, she had been compelled to pay the debt to save her lands.   It matters not that the deed was a quit-claim deed.   That did not pay the debt of the grantors.   It conveyed the lands, it is true, subject to the mortgage, necessarily subject to it, because it was a lien upon the lands, but subject to it only as security for their debt.   Until she paid the debt, or her lands were taken to pay it, she would suffer no damage, being in the same condition as any surety for a principal debtor.   But the moment she paid the debt to save her lands, she would have a cause of action, not on account of any effect attributable to the deed, but because the principal debtors failed to pay their debt, and

she, as surety in virtue of her ownership of the lands, had paid it. The principles of law, applicable to quit-claim deeds, would have nothing, whatever, to do with the case; but the principles of law, governing the relations between principal and surety, would control.

On the 8th of April, 1874, one Stohl recovered a judgment, in the Supreme Court, against John Beck, for upwards of $6,000, and on the 16th day of October, thereafter, he commenced an equitable action against Mr. and Mrs. Beck to charge that judgment upon the lands, on the ground that they had been bought and paid for with the money of Mr. Beck.

On the 1st of December, 1874, Fellows began an action to foreclose the mortgage, and for judgment for deficiency, after applying upon the bond and mortgage the proceeds of the sale of the lands; and on the 25th of March, 1875, he recovered judgment by default, directing a sale of the lands; and the judgment also contained a provision for the entry of judgment against Mr. and Mrs. Lyon for any deficiency which should be shown by the sheriff's report of sale to exist after applying upon the bond and mortgage the proceeds of the sale.

On the 20th of July, 1875, Fellows assigned the bond, mortgage and judgment to one Caldwell, and on the 15th day of August, thereafter, the sheriff offered the lands for sale by virtue of the foreclosure judgment, and the plaintiff bid at the sale some more than the amount due upon the judgment, and the lands were struck off to him; but he never paid any part of the bid, and it was never demanded of him. No note or memorandum of the sale appears to have been made; the sheriff made no report of the sale, and the sale was abandoned. As that sale, even if binding upon Wadsworth, was never consummated, and was abandoned, it can have no effect, whatever, upon the rights of the parties in this action, and may be treated as out of the case; and the foreclosure judgment must be treated as if no attempt had been made to execute it. Mr. and Mrs. Lyon certainly cannot complain that it was not executed, and that Wadsworth was not held to his bid, because they were

the principal debtors, bound to pay the bond and mortgage, and they could not ask to have the lands sold to discharge their debt. They were in no way damaged and acquired no equities, because Wadsworth did not pay his bid and take a conveyance of the lands. If he had done so, to the extent of the amount due upon the bond, he would have paid their debt.

Afterward, on the 31st of July, 1876, Stohl recovered a judgment in his equitable action against Mr. and Mrs. Beck, declaring his judgment against Mr. Beck a lien on the lands and directing that a receiver be appointed and the lands sold by him to satisfy the judgment. Thereafter, on the 12th of August, Mrs. Beck sold and conveyed the lands to the plaintiff by a quit-claim deed, for the consideration of $250. On the 15th of August one Deming was appointed receiver, in pursuance of the judgment in the equitable action, and he qualified as such. Afterward, Caldwell demanded of plaintiff the money due upon the bond, mortgage and judgment, and threatened to sell the lands by virtue of the judgment if the money was not paid; and thereupon, on the 19th day of August, at the request of the plaintiff, one Curtiss paid Caldwell the amount demanded, to-wit, $3,000, with interest thereon from August 1, 1875, and Caldwell thereupon assigned the bond, mortgage and judgment to Curtiss. On the 14th of October, 1876, in pursuance of an order of the court, Deming, as receiver, conveyed the lands to the plaintiff for the consideration of $200, which was paid by the plaintiff and applied on the judgment of *Stohl* v. *Beck.* After this conveyance, and the prior conveyance to plaintiff by Mrs. Beck, he took Mrs. Beck's position in the title to the lands and had all the title thereto which either she or her husband had previously had. He acquired no equities and no rights from her against Mr. and Mrs. Lyon, because she had no claim of any kind against them. She had not paid their debt and her lands had not been taken to pay it. All plaintiff got from Mrs. Beck were the lands, and they came to him as they came to her, charged with the debt of Mr. and Mrs. Lyon, and in his hands they were as before, simply security for the debt. Mr.

and Mrs. Lyon still remained the principal debtors, liable, as between them and the lands, and as between them and the plaintiff and every one else, to pay the bond. It matters not that the plaintiff apparently paid but $450 for the lands. It was of no concern to Mr. and Mrs. Lyon and did not improve their position. Whether the plaintiff paid much or little for the lands did not enhance or affect their legal or equitable rights.

On the 20th of November Curtiss assigned the bond, mortgage and judgment to Mrs. White, and she paid him the full amount due thereon, and on the 22d of August, 1877, she assigned the bond, mortgage and judgment to Nelson K. Hopkins, who paid her the full amount due thereon. All the assignments above mentioned were made at the request and by the procurement of the plaintiff. On the 6th of December, 1877, the plaintiff sold the lands to one McDonough for $4,000, by a deed which contained the usual covenant for quiet and peaceable possession, and at the same time he agreed with McDonough to clear the lands of the lien of the mortgage and judgment; and thereafter, Hopkins, at the request of the plaintiff, released and discharged the lands from the lien of the mortgage and judgment, reserving and retaining the right to enforce the bond against Mr. and Mrs. Lyon.

Out of the $4,000 received from the sale of the lands plaintiff paid to Mrs. White the consideration of her assignment to Hopkins. On the 7th of August, 1878, the Supreme Court gave plaintiff leave to sue the bond, notwithstanding judgment of foreclosure, and thereafter Hopkins made formal assignment of the bond to the plaintiff and then this action was commenced to recover the amount due thereon, to-wit, $3,000, with interest from August 1, 1875.

The defendants do not claim that they have paid their bond or that they have been in any way discharged or released from the payment of the debt created thereby, or that they have been damaged by any thing that has been done with it. Their only defense is that the bond became merged in the foreclosure

judgment, and that, therefore, the plaintiff cannot recover thereon against them.

There has in fact been no recovery upon the bond. The judgment simply provides as follows: "That if the moneys arising from said sale shall be insufficient to pay the amount so reported as actually due to the plaintiff, with interest thereon, and the costs, and expenses of sale as aforesaid, that the said sheriff specify the amount of such deficiency in his report of sale; and that on the filing of such report the defendants, James S. Lyon, Louisa L. Lyon and Bridget O'Day, who are personally liable for the payment of the debt secured by the said bond and mortgage, pay to the plaintiff the amount of such deficiency, with interest thereon from the date of said last-mentioned report, and that the plaintiff have execution therefor."

The judgment for deficiency is a mere contingency. It has not been actually entered, and is not a lien upon any property. It cannot be entered until the deficiency has been ascertained; and that can be ascertained only after a sale of the lands. No execution can be issued upon it for any deficiency, as it now stands. If there had been a sale, and the lands had sold for enough to satisfy the judgment and costs, then no judgment for deficiency could have been entered against the defendants. The proceeds of the sale would simply have satisfied the bond and mortgage, and the effect would then have been no other than if the owner of the lands, standing as surety for the debt, had paid the bond; and it is well settled that a surety can pay the principal obligation, and then take the obligation, notwithstanding payment, and enforce it against the principal debtor. (*Champney* v. *Coope*, 34 Barb. 539; *S. C.*, 32 N. Y. 543; *Harbeck* v. *Vanderbilt*, 20 id. 395; *Edgerly* v. *Emerson*, 3 Foster [N. J.], 555.)

The judgment as to the foreclosure is final, but not as to the bond. As to that, it is simply decided that the obligors are liable thereon. The judgment is not as broad as the bond, and not as good as the bond, and hence the bond should not be held to be merged in it. The judg-

ment as to the bond, in a general sense, is merely inter-locutory; and while it may for some purposes be regarded as final, it is not so for all purposes. As to the mere holder of the bond, it may be regarded as final and conclusive, and may give him all the remedy and relief which he can ask ; but it has determined nothing as to the rights of a surety against the obligors, and such rights were in no way litigated or involved in the determination made by that judgment. To such a case as this, then, the principle upon which the doctrine of merger rests, is in no way applicable.

When the principal and surety are sued upon any obligation securing a debt, as between the plaintiff and the defendants, the obligation becomes merged in the judgment; but it is not necessarily merged as between the defendants. In *Clark* v. *Rowling* (3 N. Y. 216), it was held, as stated in the head-note, that "a judgment upon a contract technically merges the demand, but not in so complete a sense that the courts may not look behind the judgment to see upon what it is founded for the purpose of protecting the equitable rights connected with the original relation of the parties ; " and HURLBURT, J., in his opinion, said : "A judgment, instead of being regarded strictly as a new debt, is sometimes held to be merely the old debt in a new form, so as to prevent a technical merger from working injustice." In *Kelsey* v. *Bradbury* (21 Barb. 531), judgment was recovered against the maker and indorser of a promissory note. The indorser paid the judgment and took up the note and transferred it to Bradbury, and it was held that he could enforce payment of it against the maker, and that the note was not merged in the judgment. In Freeman on Judgments (§ 227), the rule is well formulated thus: " The merger of a cause of action has no effect upon the liabilities of the co-plaintiffs or the co-defendants between each other. Those liabilities are not in issue in the case, and therefore are not affected by the final determination of the action. In extinguishing a demand a judgment has no greater effect than mere payment. It leaves the liability of other parties to the defendant unaffected. A recovery upon a note against the maker and in-

dorsers does not so merge the note as to prevent the indorsers from paying the judgment, receiving the note, and maintaining an action upon it against the maker." In *Hanover Fire Ins. Co.* v. *Tomlinson* (3 Hun, 630), it was held that " a judgment of foreclosure directing the sale of mortgaged premises, and the payment by the defendant of any deficiency that might arise upon such sale, is not such a judgment as is contemplated by section 71 of the Code relating to the bringing of actions upon judgments. On such judgments further proceedings, such as the confirmation of the referee's report, etc., must be had before a personal judgment can be entered."

The act of bringing the suit to foreclose the mortgage was not the act of the plaintiff, and it is difficult to perceive how it could have any effect upon his rights. He had the right, as owner of the lands which stood as security for the bond, at any time, to pay the bond, and then enforce it against the principal debtors. He does not occupy simply the position of the assignee of a bond and mortgage, having merely the rights which the mortgagee or assignee had ; but he occupies the position as well of a surety, entitled to be subrogated to all the securities which the creditor held for the debt against the principal debtors; and by virtue of that principle of equity he was entitled to take this bond, after payment, and enforce it against the defendants. The right of subrogation in such a case is sanctioned by clear and well-established principles uniformly applied by the courts, and rests upon the broad and deep foundations of natural justice and moral obligation. (*Hayes* v. *Ward*, 4 Johns. Ch. 123 ; *Hunt* v. *Amidon*, 4 Hill, 345 ; *Lewis* v. *Palmer*, 28 N. Y. 271 ; *Ellsworth* v. *Lockwood*, 42 id. 89 ; *Cole* v. *Malcolm*, 66 id. 363.)

The defense set up is an extremely technical one ; in no way involving the merits of the controversy between these parties. So far as I can perceive, it could make no difference with these defendants whether the plaintiff sued them upon the bond, or for the money, which he was obliged to pay to relieve his land from the lien of the mortgage. The recovery would be just

as great in the one case as the other, and governed by substantially the same principles.

We are, therefore, of the opinion that this bond was not so merged in the judgment of foreclosure as to deprive the plaintiff, standing really in the position of surety for the debt, of the right to take it and enforce it against the defendants.

It matters not that plaintiff's equities are not set up, or mentioned in the complaint. He had the right, as surety, to pay the bond, take an assignment thereof, and bring his action thereon. Upon the trial he could prove his equities, in answer to any defense which the defendants attempted to establish, to sustain his right to recover as assignee of the bond. But the whole case was proved on both sides, without any objection to the form of the complaint, and all the facts showing plaintiff's equitable rights were found by the trial judge. Under such circumstances the plaintiff should have had such relief as the facts proved and found entitled him to.

The defendants, Mr. and Mrs. Lyon, are absolutely without any equities. They gave their bond for full value and have never paid it or devoted any property to pay it. If the plaintiff cannot enforce payment thereof, then no one can, and they have become absolved from payment by some strange legerdemain of law and facts as remarkable as incomprehensible.

The judgment should be reversed and a new trial granted, costs to abide the event.

MILLER, J. (dissenting, written on first argument). The first question which demands consideration in this case is, whether the claim of the plaintiff, which is sought to be enforced herein, is barred by the judgment and the sale made upon the foreclosure of the mortgage, collateral to the bond in suit, by Fellows, the former owner and from whom title was acquired by the plaintiff, by virtue of several intermediate assignments. Said judgment recited the amount due upon the bond, and directed a sale of the mortgaged premises, the payment of the moneys arising therefrom upon the judgment, in the usual form, and, in case of a deficiency that the respondents, who

were defendants in said action, should be personally liable therefor.

The premises were offered for sale and bid off by the appellant, who was the highest bidder, there being other bidders at the time, for an amount sufficient to satisfy the mortgage, and the costs and expenses of the foreclosure. The amount of the bid was not paid by the appellant, the premises were not conveyed to him, and no report of sale was made and filed. Subsequently the owner of the judgment, and of the bond and mortgage, assigned the same to one Curtiss. After this the premises were sold at a receiver's sale, upon a judgment against one Beck, who was adjudged at the time to be an owner, to the appellant, and at a still later period the appellant became the assignee of the bond and mortgage and of the judgment.

It is insisted by the appellant's counsel that there was no sale or report of sale, no deficiency on the sale, or confirmation of the report, and no judgment upon the bond in which the debt could merge, and that there was no merger or extinguishment of the debt or judgment upon the bond, and the latter was not merged in the judgment. So far as the proceedings on the foreclosure of the mortgage and the judgment thereupon, and the sale under the same are concerned, we are unable to discover any such irregularity or defect as would render them inoperative and without force. The action was brought to foreclose the mortgage, and the complaint set forth the bond and mortgage as the basis of the cause of action and alleges that no proceedings at law had been had for the recovery of the same. The decree, as already stated, provided for a sale and the payment of the amount due upon the bond and mortgage, and in case that was insufficient to pay the same, that the deficiency be specified in the report of sale, and upon filing the report, the respondents in this action, who were adjudged to be personally liable therefor, should pay the same. The respondents were made parties in that action as mortgagors, and as liable upon the bond, and were adjudged to be personally liable. The grantee of the mortgagors, under whom the plaintiff claims,

was a party in that action, and the rights of all the parties thereto, whether legal or equitable, were the subject of consideration, and the court had full power and jurisdiction of all questions which were presented, within the object and purpose for which the action was instituted, and its judgment and determination were binding as an estoppel against any other action on the bond and mortgage, upon the parties thereto, their privies and all persons who might succeed to their rights. (*Clemens* v. *Clemens*, 37 N. Y. 59 ; *Bloomer* v. *Sturges*, 58 id. 168.)

The principle laid down cannot be denied, and applying it to the case before us, it is difficult to see why the judgment and proceedings in the foreclosure action, with the sale to the plaintiff for the full amount of the bond and mortgage, is not a bar to this action, and a merger of all the rights which the plaintiff had acquired by virtue of the assignment of the bond and mortgage to him or from any other source. Whatever equitable rights he had as owner arising from the bond and mortgage, its lien upon the land, and its covenant in the deed of Lyon to Mrs. Beck, were derived from parties in the foreclosure action, and were proper subjects for consideration and determination in that suit. The sale therein disposed of the title and interest of the mortgagors in the land. The amount bid covered the entire sum due on the bond and mortgage, and the plaintiff, as the purchaser, took the land and acquired a right to a conveyance thereof by the purchase which he had made. He was entitled to the land in payment of the mortgage, which with the bond became extinguished by the sale, and the mortgage was canceled and discharged as a lien thereon. It is not apparent, after having thus become the purchaser with the right to a conveyance of the mortgaged premises, what claim remains in the plaintiff by virtue of the bond and mortgage against the mortgagors. The sale and the bid made by the plaintiff were actually and virtually in the nature of a payment which canceled all claims under the mortgage or right to enforce the bond personally against the respondents.

The plaintiff claims that the judgment for a deficiency was no part of the decree, but collateral and contingent, and until a sale is had and a deficiency is ascertained and the report confirmed there can be no personal judgment. We think that this position is not well founded, and none of the authorities cited in support of it uphold the rule contended for. They relate to the formal part of the proceeding and do not affect the question considered and discussed. It is a full answer to the proposition asserted that the judgment was a full and absolute determination of all the rights of the parties which were involved, and the subsequent proceedings were only necessary to carry out and enforce the provisions contained in the final decree adjudicating the rights of the parties. Such a judgment is held to be final, and not interlocutory, and leaves nothing further to be adjudicated or revived. (*Morris* v. *Morange*, 38 N. Y. 172. See, also, *Smith* v. *Smith*, 79 id. 634; *Jordan* v. *Van Epps*, 85 id. 427, 436.) Nor can it make any difference because the judgment in the foreclosure suit has never been executed by the sale of the land and the exact amount of the defendants' liability for any deficiency fixed. It is the judgment which fixes the rights of the parties and a sale is not required for that purpose. The authorities cited to sustain the position that the judgment was not final do not uphold that doctrine. (*Champney* v. *Coope*, 34 Barb. 539; affirmed, 32 N. Y. 543; *Harbeck* v. *Vanderbilt*, 20 id. 395.)

The order of the court which allowed the plaintiff to bring the action upon the bond cannot be regarded as any thing more than a permission to prosecute the bond with a view of testing the question as to the right of the plaintiff to sue upon the same after the foreclosure and sale by virtue of the mortgage, and the purchase of the premises by the plaintiff.

The claim that the bidding in of the property was not a sale, as no money was paid, or memorandum or contract signed, or report of sale made or confirmed, is not meritorious. It does not appear why the plaintiff did not pay his bid, or take a deed from the sheriff, or that he refused upon any of

the grounds we have stated, or that his failure was in any way attributable to any fault upon the part of the defendants. The sale being duly made upon a judgment in a judicial proceeding, it must be regarded as the execution of its provisions which are binding upon the purchaser, and that the defendants are entitled to the protection which is thereby created. It cannot be rendered of no avail, because the plaintiff, who was the purchaser, failed to complete the purchase. The plaintiff in the foreclosure suit could have compelled the purchaser to pay, for any thing which is made to appear, and the plaintiff here could have compelled the execution of a conveyance to him. The mortgage and bond were paid by the sale, and the land bid off by the plaintiff was a payment, or took the place of the amount due on the bond and mortgage, and canceled and discharged the same, and his neglect to enforce a conveyance cannot prejudice the defendants' right to insist that the sale had the effect to cancel, and operated as a satisfaction of the mortgage.

The authorities cited by the appellant's counsel in this connection do not uphold the doctrine contended for, and as there was a *bona fide* sale for the whole amount unpaid and due upon the mortgage, it is very obvious that it must be regarded as a satisfaction of the judgment of foreclosure upon which it was founded. The sheriff who sold the property was an officer of the court, and if he failed to perform his duty in respect to the sale, upon an application for that purpose, the court would by order have compelled him to sign the terms of sale *nunc pro tunc* and to make a report of sale and execute a conveyance to the purchaser. In a sale by a sheriff or referee it is not necessary that the purchaser should sign the terms of sale to make it valid, and the statute of frauds does not require any such signature. (*Miller* v. *Collyer*, 36 Barb. 250; *Willets* v. *Van Alst*, 26 How. Pr. 325; *National Fire Ins. Co.* v. *Loomis*, 11 Paige, 431.) The purchaser, by bidding at the sale, places himself under the jurisdiction of the court, and may be compelled to fulfill or be punished for contempt for not doing so. In 11 Paige (*supra*), the chancellors

lay down the rule that the report of sale is enough, and the bidder, being under the jurisdiction of the court, is liable for contempt in refusing to complete his purchase. There would, therefore, be no difficulty in this case in compelling the sheriff to report, and in carrying out the sale, and the plaintiff is not in a position to insist that there was a failure to comply with the terms of the sale, and he is estopped from claiming that the sale was invalid. It is enough to bind him that he could have enforced a conveyance and has sustained no injury by the failure of himself to sign the terms of sale or the sheriff to make a report. It does not rest with him to insist that the sale has been abandoned. He has no power or authority to abandon the sale to the detriment of other parties in the action; and such abandonment could be had only by the consent of all the parties and by an order entered setting aside the sale. As this was not done it remains in full force, to be executed whenever the appellant and owner of the bond and mortgage requires it. The claim that the respondents were not injured by the failure to enforce the sale, and have no right to the benefit arising from the same, and that it must be regarded as entirely out of the case, cannot be upheld. It constitutes a part of the record before us and cannot be ignored or disregarded. To hold that it is of no consequence is not warranted by any sound principle of law. The plaintiff has been more than reimbursed for all the money which he has paid on account of the mortgaged premises and the bond and mortgage. His claim is a technical one and must be determined according to strict legal rules. He has no equity as against the defendants and the case should be disposed of, having in view only the principles of law which are applicable to the same.

The appellant's counsel also claims that he occupied the position of a surety for the debt, and if the sale was good the debt would not have been extinguished because the purchase by the surety of his own premises would be nothing more than a redemption. We think that the rule contended for has no application when the real estate covered by a mort-

gage has been sold and bid off upon a foreclosure sale of the same for the amount due upon the mortgage. The sale of the property in such a case is an extinguishment, or a payment of the demand, and the plaintiff is in no position to claim the benefit of the rule contended for. The holder of the bond and mortgage in his complaint claimed to recover on the bond as well as the mortgage. The foreclosure sale was made accordingly. A sum sufficient was bid to pay the amount of the bond and mortgage, the plaintiff being the purchaser and at the time having no interest in the mortgage. That he was not compelled, and did not of his own volition complete the purchase, and by means of his own wrong seek to avoid the sale confers upon him no additional right as a surety, and places him in no better or different condition than any other purchaser would have occupied under similar circumstances.

It should also be observed in this connection that at the time of the sale under the foreclosure judgment, plaintiff had no title to, or interest in, the premises. He acquired the interest under which he claims the rights of a surety, by virtue of a deed dated August 12, 1876, from Mrs. Beck, the former owner, and the deed from the receiver appointed in the creditor's suit, executed the 14th day of October, 1876.

It is claimed by the appellant's counsel that when defendants conveyed the mortgaged premises to Sarah Beck they remained primarily liable on the bond to pay the debt, and the land was a mere surety collateral and secondary to the bond, and several authorities are cited to sustain this position. The case of *Barnes* v. *Mott* (64 N. Y. 397) is particularly relied upon, and while the rule there laid down in the opinion may be regarded as applicable to the case there considered, we are unable to perceive how it applies to the circumstances which are developed in this case. That action was brought to restrain the sale, upon an execution, of certain premises owned by the plaintiff, and to have the lien of the judgment upon said premises discharged ; also to restore the lien of the mortgage upon said premises, alleged to have been satisfied by mistake. The facts presented a case where the plaintiff was clearly entitled

to the relief granted, and the rule laid down might well be held to apply, but we think that case is not analogous in any of its leading features to the one at bar. The rule stated in the opinion cannot be invoked in this case. That case does not hold and cannot be regarded as an authority for the doctrine that an action can be maintained upon the bond under the circumstances which are here presented. The other authorities which are relied upon have received a careful examination, and we are unable to perceive how they can affect the case considered. We do not deem it necessary to discuss them at length and it is enough to say they are not in point.

Another answer to the claim of the plaintiff in this action is that the action is at law on the bond, and there is no rule which allows the equities to be brought in in such a case. To entitle the plaintiff to relief, if he had any claim, he should have brought his action in equity at the proper time to redeem the land or to be subrogated ; in which action the equities of the parties could have been properly adjudicated. Having failed to do this it is too late now to claim that in an action on the bond he can obtain equitable relief. It is no answer to this position to say that the point was not taken upon the trial. It appears that it was adjudged that the complaint be dismissed as to the defendants, no ground being stated. Under such circumstances the decision should be upheld if it can be sustained upon any valid ground. It may also be observed that if the plaintiff has any remedy it is upon the covenant in the deed and not by an action upon the bond. The deed from Sarah Beck to the plaintiff was a quit-claim deed without any covenants, and which only conveys her reversionary interest after the payment of the judgments against her husband. The deed to Mrs. Beck contained a covenant by which James Lyon did covenant to warrant and defend the said Sarah Beck in the quiet and peaceable possession of the premises. Under this covenant, if at all, plaintiff alone can maintain his claim and has no remedy against the defendants upon the bond. In such a case the rule is well settled that a party is remitted back

to his covenants in his deed, and has no other remedy. (2 Kent Com. 473.)

We are unable to discover, after full consideration, any ground upon which the plaintiff can maintain this action.

The judgment was, therefore, right and should be affirmed.

MILLER, J. (dissenting, written on reargument). Upon this reargument the question is more distinctly presented and fully discussed as to the position of Mrs. Lyon in reference to the quit-claim deed which was executed to Mrs. Beck. It is insisted by the respondents' counsel that she stood in the same position as if she had conveyed expressly *cum onere*, *i. e.*, subject to all claims, incumbrances and defects. We think this rule is well established in this State in reference to deeds without covenants. The Revised Statutes (1 R. S. 738, § 140) abolished all implied covenants in deeds in fee, and hence a mere quit-claim deed conveys simply the right, title and interest of the grantor subject to all incumbrances, claims or defects in the title, and the grantee has no remedy or redress on account of the same. He only becomes entitled to the interest of his grantor, whatever that may be, and cannot recover of such grantor the amount of any liens or incumbrances, or damages for any defect in the title. Wasburn in his work on Real Property (vol. 3, 3d ed. 380), lays down the rule thus : " If the deed contains no covenant the purchaser is wholly without remedy. The right of the grantee to relief, either in law or equity, on account of defects or incumbrances in the title, depends solely upon the covenants for title which he has received." Applying the doctrine laid down to the case considered it is difficult to see upon what ground the plaintiff can maintain this action. Even if Mrs. Beck paid a full consideration for the value of the land it cannot alter the rule, for whatever she received she only gave for it and her grantee only received, her rights in the land as it stood ; it was conveyed, and Mrs. Beck took it, subject to all liens and incumbrances. This included the mortgage then on the premises and which was collateral to the bond now in question. The question, therefore, whether Mrs. Beck

paid the full value of the land is of no sort of importance and does not require discussion. Conceding that Mrs. Lyon was liable to the obligee on the bond, for the debt thereby created, there is no principle in law or equity by which she could be made liable to Mrs. Beck, or her assigns, to pay the incumbrance on the property, or to protect Mrs. Beck's interest in the land in consequence of such incumbrance. If any such rule can be upheld then a party, who has received the full value of land conveyed by a quit-claim deed, would be obligated upon a failure of title or upon the payment of incumbrances to pay to the grantee the amount of loss actually sustained by him. A failure of title to land by reason of a previous grant of the grantor of some easement or of a mortgage thereon furnishes no case which authorizes an exception to the general rule which has been stated ; even although the grantee or the assigns lose the whole or a portion of the money paid by the fault of the grantor, the former is without remedy. The quit-claim deed only conveyed the grantor's interest, subject to all liens and incumbrances, and to all defects of title, and as no covenants are to be implied, under the Revised Statutes, the form of the deed is conclusive as to the rights of the grantee therein and to parties claiming under such grantee, and that the grantee paid only for what was conveyed. *i. e.*, the grantor's interest, subject to all imperfections and incumbrances, and for nothing more. If a recovery can be had by a grantee under a quit-claim deed without the proper covenants for a defective title, or against an obligee in a bond to which a mortgage on the premises is collateral, then the grantee takes more than is conveyed by the terms of the grant ; he not only acquires the right and title of the grantor to the land but an interest reaching far beyond that which is not contained in the conveyance, and is not to be implied from its form or conditions. There is, we think, no foundation for the doctrine that a grantee, who acquires title to land by a quit-claim deed without a covenant against incumbrances, stands in the position of a surety, and as such can enforce a claim against the obligors in equity to relieve him from the lien of the mort-

gage. The principle, which would authorize a grantee to maintain an action to compel payment of the bond under a title, a title thus acquired by a quit-claim deed, would be in conflict with the plain meaning and import of the statute cited *supra* and is without authority to uphold it. Such a rule would inaugurate a new doctrine hitherto unknown to the law and is not supported by any adjudicated case.

No other question is raised upon this reargument, which is not sufficiently considered in my opinion on the former argument, and the judgment should be affirmed.

All concur with EARL, J., except MILLER and DANFORTH, JJ., dissenting.

Judgment reversed.